UNITED STATES of America

v.

Alphonso STODDARD, Appellant.

UNITED STATES of America

v.

Terrance BAILEY, Appellant.

Nos. 75–1500, 75–1595.

United States Court of Appeals, District of Columbia Circuit.

Argued March 5, 1976.

Decided April 7, 1977.

**1386**

Peter R. Rosenblatt, Washington, D. C. (appointed by this court), for appellant in No. 75–1500.

Peter J. Hart, Washington, D. C., with whom Edward L. Merrigan, Washington, D. C. (both appointed by this court), were on the brief, for appellant in No. 75–1595.

Jordan A. Luke, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, William D. Pease and James F. Rutherford, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before LEVENTHAL, ROBINSON and ROBB, Circuit Judges.

Opinion for the Court filed by SPOTTS-WOOD W. ROBINSON, III, Circuit Judge.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge.

■ Appellants Terrance Bailey and Alphonso Stoddard were each convicted of armed bank robbery and carrying a pistol without a license.[1] Although both were eligible for commitment under the Federal Youth Corrections Act,[2] the District Court concluded that neither would benefit therefrom and sentenced them as adults.[3] Ap-

---

1. Appellants were tried jointly with codefendant LaRue H. Purry, whose appeal was initially consolidated with their own. Since the issues raised by Purry were significantly different from those tendered by appellants, his appeal was disposed of separately in *United States v. Purry*, 178 U.S.App.D.C. 139, 545 F.2d 217 (1976).

2. Act of Sept. 30, 1950, ch. 1115, 64 Stat. 1086, as amended, 18 U.S.C. §§ 5005 *et seq.* (1970). Hereinafter, citations to the Act will be solely to sections as codified.

3. Each appellant received a sentence of five to fifteen years on the bank robbery count and a one-year sentence, to be served concurrently, on the pistol-carrying charge.

pellants now challenge those sentences in this court.[4] We affirm.

## I

The Act was designed to enable federal judges to select courses of treatment for offenders under the age of 22 at conviction [5] "that will promote the rehabilitation of those who in the opinion of the sentencing judge show promise of becoming useful citizens, and so will avoid the degenerative and needless transformation of many of these young persons into habitual criminals." [6] The Act confers upon sentencing judges the options of (a) probation; (b) commitment to the custody of the Attorney General for a maximum period of six years; (c) similar commitment for a period not to exceed the term of the maximum adult sentence for the crime; and (d) sentencing, as though an adult, under any other applicable penalty provision.[7] Section 5010(d) of the Act as codified provides that before a youth offender can be sentenced as an adult, the judge must find that he "will not derive benefit from treatment" pursuant to a youth commitment.[8] By Section 5010(e), if the judge desires additional information before deciding that question, he may commit the offender for observation and study

4. Bailey also asserts that there was insufficient probable cause to justify his arrest and resultantly that evidence then seized should have been suppressed. At a hearing on the motion, the trial judge carefully considered this contention and rejected it. Transcript of Motion to Suppress at 273–282. Our examination of the record discloses no error in that ruling. Bailey also challenges the sufficiency of the evidence to support the charge of carrying a pistol without a license, contending that the only evidence of his possession of the pistol was his proximity at the time of arrest to a trashcan in a public place from which the pistol was later recovered. We need not address that argument for in any event it ignores the positive testimony of bank-teller eyewitnesses that all of the robbers were armed. Transcript of Trial at 349–350, 354.

5. A youth offender is a person under the age of 22 at the time of conviction. 18 U.S.C. § 5006(e) (1970). The Act is not generally applied to youths under the age of 18 since they are eligible for disposition under the Federal Juvenile Delinquency Act, Act of June 25, 1948, ch. 645, 62 Stat. 857, as amended, 18 U.S.C. §§ 5031 et seq. (Supp. V 1975). Persons between the ages of 22 and 26 at conviction may be committed under the Youth Corrections Act if "the Court finds that there is reasonable groun[d] to believe that the defendant would benefit from" treatment thereunder. 18 U.S.C. § 4209 (1970). See Dorszynski v. United States, 418 U.S. 424, 433 n.9, 94 S.Ct. 3042, 3048 n.9, 41 L.Ed.2d 855, 863 n.9 (1974).

6. H.R.Rep. No. 2979, 81st Cong., 2d Sess. 1 (1950); U.S.Code Cong.Serv. 1950, p. 3983.

7. 18 U.S.C. § 5010 (1970) provides as follows:
(a) If the court is of the opinion that the youth offender does not need commitment, it may suspend the imposition or execution of sentence and place the youth offender on probation.

(b) If the court shall find that a convicted person is a youth offender, and the offense is punishable by imprisonment under applicable provisions of law other than this subsection, the court may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter until discharged by the Division as provided in section 5017(c) of this chapter; or

(c) If the court shall find that the youth offender may not be able to derive maximum benefit from treatment by the Division prior to the expiration of six years from the date of conviction it may, in lieu of the penalty of imprisonment otherwise provided by law, sentence the youth offender to the custody of the Attorney General for treatment and supervision pursuant to this chapter for any further period that may be authorized by law for the offense or offenses of which he stands convicted or until discharged by the Division as provided in section 5017(d) of this chapter.

(d) If the court shall find that the youth offender will not derive benefit from treatment under subsection (b) or (c), then the court may sentence the youth offender under any other applicable penalty provision.

(e) If the court desires additional information as to whether a youth offender will derive benefit from treatment under subsections (b) or (c) it may order that he be committed to the custody of the Attorney General for observation and study at an appropriate classification center or agency. Within sixty days from the date of the order, or such additional period as the court may grant, the Division shall report to the court its findings.

8. 18 U.S.C. § 5010(d) (1970).

culminating in a report to the judge of findings in that regard.[9]

In *Dorszynski v. United States,* [10] the Supreme Court held that before a youth offender can be sentenced as an adult pursuant to Section 5010(d), the judge must make an explicit finding on the record that the offender will not benefit from treatment under the Act.[11] In so holding, the Court departed from the view of several of the courts of appeals that an implicit finding of no benefit sufficed,[12] but rejected the conclusion of some courts of appeals, including this court, that the finding must be accompanied by a statement of supporting reasons,[13] declaring that the only purpose to be served by requiring such a statement would be "to facilitate appellate supervision of, and thus to limit, the trial court's sentencing discretion." [14] At the same time, the Court reaffirmed the obligation of appellate courts to scrutinize the "judicial process" by which punishment for crime is imposed.[15]

**9.** 18 U.S.C. § 5010(e) (1970). The study to be performed is described in 18 U.S.C. § 5014 (1970) as it existed at the time of the studies and reports in these cases:

> The Director [of the Bureau of Prisons] shall provide classification centers and agencies. Every committed youth offender shall first be sent to a classification center or agency. The classification center or agency shall make a complete study of each committed youth offender, including a mental and physical examination, to ascertain his personal traits, his capabilities, pertinent circumstances of his school, family life, any previous delinquency or criminal experience, and any mental or physical defect or other factor contributing to his delinquency. In the absence of exceptional circumstances, such study shall be completed within a period of thirty days. The agency shall promptly forward to the Director and to the Division [of the Board of Parole] a report of its findings with respect to the youth offender and its recommendations as to his treatment. At least one member of the Division, or an examiner designated by the Division, shall, as soon as practicable after commitment, interview the youth offender, review all reports concerning him, and make such recommendations to the Director and to the Division as may be indicated.

This section has since been amended, however, the amendments are not material for present purposes. Parole Commission and Reorganization Act, § 6, Pub.L. No. 94–233, 90 Stat. 232 (1976).

The legislative history of the Act is replete with references to its goal of rehabilitation of youth offenders. The House Committee on the Judiciary proclaimed that one objective of the Act was "to provide a system for the treatment and rehabilitation of youth offenders." H.R. Rep. No. 2979, 81st Cong., 2d Sess. 1 (1950); U.S.Code Cong.Serv. 1950, p. 3983. The report continues:

> The problem is to provide a successful method and means for treatment of young men between the ages of 16 and 22 . . . a method and means that will effect rehabilitation and restore normality, rather than develop recidivists. . . .
>
> The underlying theory of the [Act] is to substitute for retributive punishment methods of training and treatment designed to correct and prevent antisocial tendencies.

*Id.* at 3; U.S.Code Cong.Serv. 1950, p. 3985. In light of this clear declaration of congressional purpose, it is obviously important that the Section 5010(e) study and report comprehensively and thoughtfully explore the defendant's susceptibility to youth treatment.

**10.** *Supra* note 5.

**11.** 418 U.S. at 425–426, 444, 94 S.Ct. at 3044, 3053, 41 L.Ed.2d at 858–859, 869. See note 14 *infra.*

**12.** See *Williams v. United States,* 476 F.2d 970, 971 (3d Cir. 1973); *Cox v. United States,* 473 F.2d 334, 337 (4th Cir.), *cert. denied,* 414 U.S. 869, 94 S.Ct. 183, 38 L.Ed.2d 116 (1973); *United States v. Jarratt,* 471 F.2d 226, 230 (9th Cir. 1972), *cert. denied,* 411 U.S. 969, 93 S.Ct. 2161, 36 L.Ed.2d 691 (1973).

**13.** See *United States v. Coefield,* 155 U.S.App. D.C. 205, 210, 476 F.2d 1152, 1157 (*en banc* 1973); *United States v. Kaylor,* 491 F.2d 1133, 1140 (2d Cir. 1974); *Brooks v. United States,* 497 F.2d 1059, 1062–1063 (6th Cir. 1974).

**14.** 418 U.S. at 441–442, 94 S.Ct. at 3052, 41 L.Ed.2d at 867. The Court summarized its conclusion thusly:

> We conclude that while an express finding of no benefit must be made on the record, the Act does not require that it be accompanied by supporting reasons.

*Id.* at 425–426, 94 S.Ct. at 3044, 41 L.Ed.2d at 858–859.

**15.** "Appellate modification of a statutorily-authorized sentence . . . is an entirely different matter than the careful scrutiny of the *judicial process* by which the particular punishment was determined. Rather than an unjustified incursion into the province of the sentencing judge, this latter responsibility is, on the

■ So, as we have previously recognized, appellate review of the sentencing process is in order where, for example, it is contended that the sentencing judge relied on improper or inaccurate information,[16] that the defendant was not represented by counsel at sentencing,[17] that the prosecutor violated his agreement not to allocute at sentencing [18] or that a stiffer sentence was imposed because a defendant asserted his innocence at trial.[19] The Supreme Court has also made plain that we are authorized to reexamine the sentencing process where it is alleged that the judge totally failed to exercise his discretion in imposing sentence.[20] With this narrow but nonetheless important role for appellate review of sentencing in mind, we turn to the specific claims advanced on these appeals.

## II

After appellant Bailey's conviction, the trial judge committed him for study and an evaluation to assist an assessment of his capacity for benefit from treatment pursuant to the Act.[21] At sentencing, the judge read from the ensuing report, which recommended that Bailey be sentenced to a lengthy term as an adult offender.[22] The recommendation was based on findings that Bailey posed a physical threat to the community because he was likely to engage again in criminal activity, that he had failed to profit from previous exposure to the criminal justice system, and that he was in need of vocational counseling and training as well as treatment for drug abuse.[23] The judge then stated, "I find and make a specific finding of no benefit to this defendant by incarceration under the Youth Corrections Act." [24]

Bailey does not dispute, nor could he, that the sentencing judge made an explicit no-benefit finding. Rather, he contends that the Section 5010(e) report was legally insufficient to sustain that finding. More particularly, he argues that the reasons offered for the recommendation of an adult sentence could not support the no-benefit finding because they were irrelevant to amenability to treatment. Bailey goes a step further in maintaining that the factors discussed in the body of the report dictated the conclusion that Bailey would benefit from a commitment under the Act.

contrary, a necessary incident of what has always been appropriate appellate review of criminal cases." 418 U.S. at 443, 92 S.Ct. at 3053, 41 L.Ed.2d at 868, quoting *United States v. Hartford,* 489 F.2d 652, 654 (5th Cir. 1974) (emphasis in original).

**16.** *United States v. Allen,* 166 U.S.App.D.C. 271, 272, 510 F.2d 651, 652 (1974), citing *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972). See also *United States v. Bass,* 175 U.S.App.D.C. 282, 290, 535 F.2d 110, 118 (1976).

**17.** *United States v. Allen, supra* note 16, 166 U.S.App.D.C. at 272, 510 F.2d at 652, citing *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948).

**18.** *United States v. Allen, supra* note 16, 166 U.S.App.D.C. at 272, 510 F.2d at 652, citing *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971).

**19.** *United States v. Allen, supra* note 16, 166 U.S.App.D.C. at 272, 510 F.2d at 652, citing *Scott v. United States,* 135 U.S.App.D.C. 377, 419 F.2d 264 (1969).

**20.** *Dorszynski v. United States, supra* note 5, 418 U.S. at 443, 94 S.Ct. at 3052, 41 L.Ed.2d at

868. See also *United States v. Dancy,* 166 U.S.App.D.C. 399, 510 F.2d 779 (1975) (remand for resentencing because sentencing judge believed himself bound by recommendation in Section 5010(e) report); *United States v. Ingram,* 530 F.2d 602 (4th Cir. 1976) (sentence vacated despite no-benefit finding because sentencing discretion was negated by judge's statement that he would never use Youth Corrections Act for a particular class of offenses).

**21.** Transcript of Sentencing, Feb. 14, 1975, at 5.

**22.** Transcript of Sentencing, May 23, 1975, at 3.

**23.** *Id.* at 3. The judge seemingly did not regard the third reason as support for the recommendation since after reading the first two, he stated that "[t]hen they go on to indicate he needs among other things vocational training. And then they simply ask me to advise them." *Id.*

**24.** *Id.* at 8.

■ In *United States v. Hopkins*,[25] in remanding for an explicit finding regarding benefit, we noted that the Section 5010(e) report there involved contained "inconsistent, conflicting and conclusory information," and we left open the question whether "evidence of such patent unreliability" might warrant a remand for inquiry into the accuracy of the report.[26] We do not encounter that situation here, however. Admittedly, some of the reasons advanced for the proposal of an adult sentence do not relate to amenability to treatment. But the report also disclosed a good deal of other information, the accuracy of which is in no wise challenged,[27] from which the judge could conclude that Bailey would likely not benefit from treatment under the Act.[28] That being true, our scrutiny is at an end; whether we ourselves would have found benefit on this record is of no moment.[29]

### III

The chronology of events leading to appellant Stoddard's sentence is somewhat complex. The armed bank robbery for which he was convicted occurred while he was on release pending trial for a prior unarmed bank robbery. Before the trial of the instant case, Stoddard pled guilty to the unarmed bank robbery and subsequently underwent a Section 5010(e) study and report yielding a recommendation of a six-year commitment under the Youth Corrections Act. The sentencing judge accepted the recommendation respecting youth treatment but decided that a ten-year commitment was appropriate.

Two days thereafter, Stoddard went to trial in the present case before the same judge and a jury. Following conviction, the judge ordered a second Section 5010(e) study and report, and at sentencing announced the resulting recommendation of a "commitment under the regular [as opposed to youth] sentencing procedures."[30] Noting that he "was pleased to have the benefit of that further study," the judge went on to say that "in addition and separate from that, I find that Alphonso Stoddard would not benefit from the Youth Corrections Act."[31] The judge then imposed an adult sentence, to be served consecutively to the ten-year commitment for the prior crime. Stoddard claims that it was logically inconsistent for the sentencing judge to structure an adult sentence atop the previous youth commitment because, he argues, the only change transpiring between the two was the second conviction, and to alter the prognosis of his ability to benefit from youth treatment solely on the basis of the second conviction was impermissible.

We find, however, that the record does not support the assumption that the judge took the second conviction as decisive on the question of Stoddard's potential for benefit. We note initially that if that had been the judge's view, he could have sentenced Stoddard without directing and considering a new Section 5010(e) report, but that instead he called for another study in order that "the youth correction people [can] take a look at him in connection with the present case."[32] Beyond that, the second report incorporated new material which the judge could accept as bearing on Stoddard's amenability to youth treatment. Specifically, the second study revealed that Stoddard had been treated unsuccessfully

---

25. 174 U.S.App.D.C. 244, 531 F.2d 576 (1976).

26. *Id.* at 250, 531 F.2d at 582.

27. Counsel for Stoddard and Bailey had access to the Section 5010(e) reports.

28. Prominent among relevant factors were some related to absence of motivation and lack of desire to change his life-style. The Section 5010(e) reports were transmitted under seal by order of the District Court as a supplemental record on appeal. This opinion refers only to materials in the reports bearing heavily on the issues on appeal.

29. See text *supra* at notes 11–14.

30. Transcript of Sentencing, May 5, 1975, at 9.

31. *Id.*

32. *Id.*

for drug abuse in the past, whereas the first report had indicated that no such treatment had ever been undertaken.[33] Additionally, the second report contained fresh observations concerning Stoddard's unwillingness to sustain employment.[34] So, contrary to his contention, the second conviction was not the only premise available for the second sentence. And in the context of the additional information undercutting potential for benefit, the sentencing judge was entitled to take into account that he now had before him a defendant who had been convicted of a professional criminal's activity—the armed bank robbery.

█ This, then, does not emerge as a situation wherein a sentencing judge has reasoned merely on the basis of another conviction that a defendant previously

deemed able to benefit from youth treatment no longer retained that capability.[35] In essence, Stoddard merely disagrees with the sentencing judge's assessment of the second report and asks us to substitute our own.[36] The narrowly limited scope of sentencing-review forbids us this option, and we intimate nothing as to any result we might reach were it open to us.

### IV

Appellants have not demonstrated that the judicial processes forerunning their sentences went awry. We thus cannot afford them the kind of review they really seek. We are not at liberty to fashion new sentences in lieu of those imposed by the sentencing judge. The judgments appealed from are accordingly

*Affirmed.*

---

**33.** Section 5010(e) Report on Stoddard at 3.

**34.** *Id.* The reasons offered in the report for the recommendation of an adult sentence do not relate to the new material in the report. Those reasons were: "first, Mr. Stoddard appears to represent a physical danger to the welfare of his community; two, Mr. Stoddard is currently serving a 5010(c) sentence for a bank robbery." Transcript of Sentencing, May 5, 1975, at 9.

**35.** In *United States v. Ortiz,* 513 F.2d 198 (9th Cir.), *cert. denied,* 423 U.S. 843, 96 S.Ct. 78, 46 L.Ed.2d 64 (1975), the court vacated an adult sentence imposed on a substantive count of an indictment because the sentencing judge had at the same time assessed a youth commitment on the companion conspiracy count, reasoning:

When the District Judge sentenced Ortiz under the provisions of the Youth Corrections Act, he undeniably found, by implica-

tion, that Ortiz would derive benefit from the rehabilitative treatment contemplated and provided by that Act. Having so found, it was inconsistent for the judge to treat Ortiz as an adult for the purpose of sentencing on the substantive conviction and to impose the additional five year consecutive sentence. *Id.* at 199.

**36.** Stoddard also criticizes the Section 5010(e) study for omitting further psychiatric testing. While it is true that the second study merely incorporated the psychiatric evaluation done a few months earlier, it did include a new compilation of educational, social and medical data, and a new psychological evaluation and classification study. Since this strikes us as entirely reasonable, we need not decide what the scope of permissible review might otherwise be.