**UNITED STATES of America, Plaintiff,**

**v.**

**Glenn R. JEWETT, et al., Defendants.**

**No. 85–00113–01/04–CR–W–1.**

United States District Court,
W.D. Missouri, W.D.

Dec. 18, 1985.

Robert G. Ulrich, U.S. Atty., Robert E. Larsen, Asst. U.S. Atty., Kansas City, Mo., for plaintiff.

Ronald E. Partee, Kansas City, Mo., for defendants.

## MEMORANDUM AND ORDER DENYING MOTION FOR APPROVAL OF EXCESS COMPENSATION

### I.

JOHN W. OLIVER, Senior District Judge.

This case pends on the motion of Ronald E. Partee, appointed counsel for the defendant Glenn R. Jewett, which requests (1) that this Court certify that compensation in excess of $2,000.00 is necessary for fair compensation and (2) that the Chief Judge of the United States Court of Appeals for the Eighth Circuit approve this Court's certification. Appointed counsel's request for certification will be denied.

### II.

#### A.

18 U.S.C. § 3006A(d)(2) of the Criminal Justice Act provides that for "representation of a defendant before the United States magistrate or the district court, or both, the compensation to be paid to an attorney ... shall not exceed $2,000 for each attorney in a case in which one or more felonies are charged,...." Section 3006A(d)(3) provides that payment of fees "in excess of any maximum amount provided in paragraph (2) of this subsection may be made for extended or complex representation whenever the court in which the representation was rendered, ... certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit."

The 1984 Amendment to the Criminal Justice Act increased the former 1970 rate of $30.00 per hour for in court time to $60.00 per hour, the former 1970 rate of $20.00 per hour for out-of-court time to $40.00 per hour, and the 1970 maximum $1,000.00 amount that could be allowed by a district court to $2,000.00 maximum.[1] The legislative history of the 1984 amendment, House Report No. 98–764, 98th Cong. 2d Sess., *reprinted in* 1984 U.S.Code Congressional and Administrative News 3667, stated two reasons in support of the 1984 increase in rates. The first reason was that "[w]hile legal fees and costs have increased dramatically during the past thirteen years, the 1970 hourly rates and maximums have never been adjusted and now constitute unrealistically low compensation for appointed counsel."[2]

The report stated the second reason that "[i]n addition, the very low statutory maximums have resulted in a substantial number of requests for payment in excess of the maximums, thus burdening the chief judges of the court of appeals with administrative determinations as to the reasonableness of requested excess compensation." It is thus apparent that the Congress was of the view that when the 1970 rates and maximums were doubled in 1984, the need for requests for certification to the Chief Judge of the circuit would be substantially reduced.

It must also be noted that the Congress has always recognized that a substantial element of public service on the part of counsel appointed under the Criminal Justice Act was to be expected from members

---

1. When the Criminal Justice Act was enacted in 1964 the rates were $15.00 for in court time, $10.00 for out-of-court time, with a district court maximum of $500.00. The Congress granted no increases from 1970 to 1984 when, as stated in the text, the hourly rates and the maximum allowable by the district court were doubled.

2. The report shows that the Judicial Conference of the United States had directed the attention of Congress to a recent report of the General Accounting Office which stated that the "real value [of the fees currently paid to court appointed attorneys under the CJA] has obviously decreased substantially because of inflation."

of the bar in the administration of the Act. In *United States v. Thompson*, 361 F.Supp. 879 (D.D.C.1973), Chief Judge Bazelon noted that when the rates and maximums were raised in 1970 above those provided in the 1964 Act, "the 1970 amendments were clearly intended to ease the financial burden of the attorney called upon to represent an indigent defendant in a federal criminal case. S.Rep. No. 91–790, 91st Cong., 2d Sess. at 14–15 (1970); H.R. Rep. No. 91–1546, 91st Cong., 2d Sess. at 4, 10 (1970)." He added that there "remains, however, a substantial element of public service on the part of appointed counsel, for Congress made it plain that the fees allowable under the amended Act 'still [do] not provide full compensation.' S.Rep. No. 91–790, *supra*, at 15" and that these "matters must be kept in mind by the court when it fixes 'fair compensation,' and, in so doing, authorizes the expenditure of a very limited resource." [3]

Congress has always made clear that it intended that "fair compensation," rather than "full compensation," for appointed counsel was contemplated by the Criminal Justice Act. If the Congress intended that full, rather than fair compensation should be awarded it would not have placed any limitation on either the hourly rates or the maximum amounts that could be awarded.

We turn now to the guidelines and standards that have been promulgated by the Judicial Conference of the United States and by the Chief Judge of the Eighth Circuit under which a district court is required to make the determination of "fair compensation" to counsel appointed under the Criminal Justice Act.

### B.

Volume VII of the *Guide to Judiciary Policies and Procedures* is entitled "Appointment of Counsel in Criminal Cases".

Chapter 2 contains the guidelines and standards approved by the Judicial Conference of the United States. In Section B, paragraph 2.22(B), p. 2–17 under the title of "maximum compensation," it is stated that in "determining if an excess payment is warranted, the district court judge and the chief judge of the Circuit should make a threshold determination as to whether the case is either extended or complex."

It was then stated that after "establishing that a case is extended or complex, the approving judicial officer should determine if excess payment is necessary to provide fair compensation." In defining the criteria to be applied by a district court, the Judicial Conference stated:

> The following criteria, among others, may be useful in this regard: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

The foregoing guidelines of the Judicial Conference were transmitted to the district courts by the Administrative Office in July 1978 and have not been substantially changed since that time.

### C.

Shortly after the Honorable Donald P. Lay entered upon duty as Chief Judge of the Eighth Circuit on December 31, 1979, he directed a letter dated April 9, 1980 to all circuit and district judges in this circuit on the subject of awards of compensation

---

**3.** The legislative history to which reference was made by Chief Judge Bazelon in *United States v. Thompson* expressly stated that when Congress provided for compensation for appointed counsel, it "was intended to ease the financial burden on the attorney, who offers his services to a defendant as a professional public duty" and that the "level of fees established under the act was intended to offer some but not full compensation for the appointed attorney and to provide adequate defense services for his client." *See* 2 U.S.Code and Administrative News, 91st Cong. 2d Sess. 1970, pp. 3982, 3984.

under the Criminal Justice Act. That letter stated that there was a great disparity in this circuit in regard to the manner in which excess compensation claims under the statute had been considered in the past. Chief Judge Lay therefore concluded that all previous guidelines and standards promulgated by the Eighth Circuit should no longer be applicable to applications for fees under the Criminal Justice Act. That letter directed that the guidelines and standards set forth in his April 9, 1980 letter should be followed until further action by him or the Judicial Council of the Eighth Circuit. The guidelines and standards stated in Chief Judge Lay's April 9, 1980 letter in regard to what may be considered a "complex" case have not changed since that letter was written.[4]

Chief Judge Lay quoted Section 3006A(d)(3) in his April 9, 1980 letter and then stated, consistent with the guidelines of the Judicial Conference, that:

(a) The key words within this provision of the Act are "extended" and "complex". Under either instance an attorney may request payment in excess of the maximum amount in order to provide "fair compensation".

(b) The attorneys, in making claim for excess compensation shall be required in the future to set forth on their voucher the itemization of time and expense *along with the statement as to why they feel the case was either "extended" or "complex".* (Emphasis added.)

Chief Judge Lay further stated that no case should be considered as an "extended" case unless it lasted beyond five days of trial.[5] Chief Judge Lay then turned to the question of when a particular case could properly be certified as "complex". In that regard it is stated that:

The only basis upon which a fee should be granted when trial time is less than five days is if counsel verifies that the case was "complex" *and in such instance counsel shall set out the reasons why he feels it was complex.* It may very well be that even on a plea of guilty without trial that a case could be "complex" if it involved *extraordinary* investigation or *extraordinary* briefing or preliminary motions, etc. A complex case, pending further definition, is one that will have to undergo individual evaluation and scrutiny by the district judge and the circuit judge. If the factual situation is complex or otherwise involved or if the legal issues are *exceedingly* difficult, *then the court may make an evaluation of complexity on that basis.* (Emphasis added.)[6]

Chief Judge Lay's letter directed attention to the opinion of Chief Judge David Bazelon in *United States v. Thompson, supra,* and quoted extensively from pages 884 and 885 of that decision. He then stated that:

In the event that an excess fee is requested by counsel and you feel that it should be reduced I think in each instance if you make the reduction or if I make the reduction counsel is entitled to an explanation as to why the fee is being reduced.... On excess fees you should consider the statute as to whether the amount is necessary due to the extended nature of the case or the complexity of

---

4. As recently as December 3, 1985, Chief Judge Lay circulated a pamphlet to all federal judges in this circuit which contained practical suggestions in regard to the processing of Criminal Justice Act vouchers relating to applications for excess fees under the Act. Paragraph (2) on page 1 of that pamphlet reiterates in summary form the applicable standard that a case must involve "extraordinary investigation and briefing, and items of that nature" before it may properly be considered to be "complex" within the meaning of the Act.

5. Chief Judge Lay in a letter dated September 10, 1981 directed that the requirement that a trial "last beyond five days of trial" should be changed so that, effective September 1, 1981, that period of time should be reduced to three days.

6. All counsel appointed in this Court under the Criminal Justice Act are furnished the form entitled "Information for Counsel Appointed under the Criminal Justice Act". Part III-D on page 3 of that form is a direct paraphrase of the portion of Chief Judge Lay's April 9, 1980 letter quoted in the text.

the case. . . . If you do not feel that it is under the circumstances, . . . then no excess fee should be awarded. In the event that you feel that it complies with the statute in order to require fair compensation I would appreciate a statement by you as the court as to whether or not you agree with counsel's representation or any other comment that you might have in guiding me to make the approval.

This Court is thus under duty to apply the guidelines and standards promulgated by the Judicial Conference and those stated in Chief Judge Lay's April 9, 1980 letter to the request made by appointed counsel in this case. In accordance with the direction of the Chief Judge's letter that counsel is entitled to an explanation of why a certification will not be made, we now state the reasons for our refusal to certify.

### III.

#### A.

Appointed counsel's suggestions in support of his motion accurately stated that Glenn R. Jewett, together with Patricia K. Jewett, Donald A. Fineout, and Shelley K. Eck, was named as a defendant in each count of a 17–count indictment charging violations of 21 U.S.C. §§ 841, 843, and 846, and 18 U.S.C. § 2.[7] Appointed counsel also stated that the four defendants had been the subject of a lengthy investigation which included electronic surveillance of their telephones, the installation of pen registers on their telephones, and physical surveillance. It was further stated that defendant Glenn R. Jewett was the subject of search warrants that required investigation and that it was thus necessary that appointed counsel review "hundreds of pages of electronic surveillance applications and orders, surveillance logs, and transcripts of intercepted conversation."

Appointed counsel emphasized that "[a]pproximately eleven pretrial motions were filed on behalf of Glenn R. Jewett,

dealing with various issues including suppression of intercepted conversations, severance, bill of particulars, and disclosure of informants" and that "[l]engthy review of documentation and research of technical issues was deemed necessary by counsel to adequately represent his client." Appointed counsel, in the concluding paragraph of his suggestions in support of his motion submitted that "this case is 'complex', and compensation in excess of the statutory guidelines is necessary to provide fair compensation."

This Court was therefore requested to consider (1) "the number of defendants," (2) "the complex nature of the crimes charged," (3) "the Court ordered electronic surveillance and hundreds of pages of documents which Counsel must review," and (4) "the novel issues of law and fact raised by pretrial motions, despite the fact that Defendant did not stand trial and entered a plea of guilty" to support a finding that this case was "complex" within the meaning of the Act.

Under the guidelines and standards stated in Chief Judge Lay's letter, a case terminated by a plea of guilty, as was this case, may be considered to be "complex" within the meaning of the Criminal Justice Act if, on the particular facts of the case, it involved *extraordinary* investigation or *extraordinary* briefing." Complexity may be said to be established "if the legal issues are *exceedingly* difficult." (Emphasis added.) The Eighth Circuit guideline is, of course, consistent with the Judicial Conference guideline that the legal or factual issues of a particular case must be "unusual" and thus require the expenditure of more time and effort "than would be required in an average case."

■ Appointed counsel's reliance on the fact that this case involved four defendants as a factor that could be said to establish that this case is a "complex" case is untenable. Many of the usual and routine controlled substance cases prosecuted in this

---

**7.** Patricia K. Jewett was represented by appointed counsel. Shelley K. Eck was represented by employed counsel. Donald A. Fineout is a fugitive. Both the Jewetts and Shelley K. Eck pleaded guilty and all three defendants have been sentenced.

judicial district, particularly those that include a conspiracy count, involve at least four and, in some cases, substantially more than four defendants.

■ Appointed counsel's conclusory statement in regard to the "complex nature of the crimes charged" is not supported by the record. The indictment in this case routinely charged a conspiracy to distribute a controlled substance, the distribution of a controlled substance on particular dates, and the use of a telephone in the facilitation of the alleged conspiracy at particular times, all in alleged violation of 21 U.S.C. §§ 846, 841(a)(1), and 843(b) and 18 U.S.C. § 2. Numerous cases of that nature involving multiple defendants are routinely processed in this Court. Nor does the fact that electronic surveillance was utilized during the investigation of this case make it "complex" within the meaning of the Act. The same thing is true in many of the usual and routine cases prosecuted in this judicial district.

The fact that counsel for all of the defendants needed to review a substantial amount of documentary evidence in regard to that electronic surveillance does not make this a "complex" case. All of that data was furnished defendants' counsel under the government's open file discovery policy. While review of that data entailed the expenditure of compensable time, the same thing is true of many other drug cases that are routinely processed in this Court.

■ Appointed counsel's contention that this case involved "novel issues of law and fact raised by pretrial motions" requires a bit more detailed discussion. The files and record in this case establish that this Court entered orders extending the time within which all defendants could file pretrial motions. We also entered an order that removed this case from the August 12, 1985 trial docket and set the case for trial on the criminal trial docket scheduled to commence September 16, 1985. The granting of the defendants' unopposed motions for extensions of time did not establish that this case was a "complex" case.

For this Court's July 12, 1985 Order removing the case from the August 12, 1985 trial docket made specific reference to the joint unopposed motion filed by defendants Glenn R. Jewett, Patricia K. Jewett, and Shelley G. Eck seeking that relief. We there noted the defendants' joint motion alleged, among other things, that:

Defendants presently anticipate filing suppression motions regarding electronic surveillance, search and seizure of evidence from Defendants' premises and persons, and statements made by Defendants to government agents. Defendants also anticipate pretrial motions concerning disclosure of confidential informants. All of these motions may well require evidentiary hearings prior to trial.

Twelve pretrial motions were thereafter filed in this case, ten on behalf of all three defendants. Appointed counsel also filed a single motion for a bill of particulars on behalf of defendant Glenn R. Jewett. Another single motion to sever was filed by appointed counsel on behalf of Patricia K. Jewett.

Examination of ten motions filed on behalf of all three defendants seems to indicate that five of the ten motions were prepared by appointed counsel for Glenn R. Jewett and that five were prepared by appointed counsel for Patricia K. Jewett.

This Court's August 21, 1985 memorandum denying all motions filed stated that we believed it appropriate to note at the outset of that memorandum that "a substantial number of the motions are clearly without merit in light of the fact, ... that the above case is an open file discovery case." Attention was there directed to Chief Magistrate Hamilton's June 20, 1985 order entered in this case in which counsel were reminded that prior to filing any discovery motions, counsel should carefully review the omnibus hearing report and to take advantage of the voluntary discovery offered by the government. Chief Magistrate Hamilton's June 20, 1985 order expressly stated that "it is not necessary for

discovery motions to be filed when the Government affords 'open file' discovery."

In spite of the fact this was an open file case, appointed counsel nevertheless filed a motion for bill of particulars and a motion for discovery. This Court's August 21, 1985 memorandum denying all pretrial motions shows on its face that, contrary to representations made in the motion to take the case off the trial docket, no evidentiary hearings prior to trial were necessary for the disposition of any of those motions.

This Court's August 21, 1985 memorandum further establishes that the only motion that could be said to have presented a substantial question was defendant's motion to suppress the wire intercept conversations. That motion, however, was based solely on an alleged violation of 18 U.S.C. § 2517(5). Determination of that motion, however, did not require an evidentiary hearing. For there was no dispute about the factual circumstances in regard to the grounds upon which that motion was based. The motion papers and exhibits attached thereto provided all necessary information for the determination of the questions presented.

It cannot fairly be said that the Section 2517(5) question presented in that single motion was a "novel" question, as appointed counsel contended in his suggestions in support of his pending motion. Nor did that motion make this case an unusual case. While the question presented had not been ruled by the Eighth Circuit, the determination of that question required only the consideration of whether two cases, one decided by the Seventh Circuit and the other by the Second Circuit, supported the defendant's argument or whether two more recent cases, one decided by the First Circuit and the other by the Eleventh Circuit, supported the government's argument. This Court simply concluded that the Eighth Circuit would follow and apply the rationale of the more recent cases decided by the First and Eleventh Circuits and stated the reasons for that view on two and one-half pages of our memorandum.

We cannot find that the pretrial motion that presented that question of law made this case an unusual one that either required "extraordinary investigation" or "extraordinary briefing" within the meaning of the Act. Nor can we find that the legal issues presented in that motion or in any of the other pretrial motions signed by appointed counsel presented legal issues that were either "unusual" or "were exceedingly difficult" within the meaning of the guidelines and standards and the Act. Indeed, our August 21, 1985 memorandum shows that all twelve of the pretrial motions were summarily denied, excepting only the motion to suppress based on an alleged violation of 18 U.S.C. § 2517(5). We incorporate what we stated in our August 21, 1985 memorandum, copy of which is attached as Appendix A, as a part of this memorandum opinion by this reference.

Under the guidelines and criteria of the Judicial Conference we cannot find that this case was a case of unusual magnitude or importance. Nor can we find that the manner in which appointed counsel performed his duty demonstrated unusual knowledge, skill, efficiency or professionalism. We further find that there were no extraordinary pressures of time or any other factors that would support a certification above the maximum $2,000.00 provided by the Act for services rendered in the district court.

Section 3006A(d)(1) provides that the hourly rates stated in that section may be paid for in court and out-of-court time "reasonably expended" by appointed counsel. We agree with Chief Judge Bazelon's statement in *United States v. Thompson, supra,* 361 F.Supp. at 884, n. 1, that "the statutory requirement that out-of-court time be 'reasonably expended' raises a difficult issue." We believe this is particularly true in a case terminated by a defendant's plea of guilty. For in such a case the amount of in court time expended is minimal; in this case, for example, counsel spent only three hours in court in connection with the defendant's plea of guilty and subsequent imposition of sentence.

Chief Judge Bazelon stated the difficult question as follows: "Is professional time 'reasonably expended' when an attorney does legal research which one already skilled in the criminal law would not need to do"? And, citing judicial wisdom that has stood the test of time for over two hundred and fifty years, he added that: " '[n]o attorney is bound to know all the law; God forbid that it should be imagined that an attorney or a counsel, or even a judge is bound to know all the law,' " quoting from *Montriou v. Jefferys,* 172 Eng. Rep. 51 (N.P.1825). *Id.* at 884.

Judge Bazelon pointed out that even an attorney who keeps abreast of developments in the pertinent area of criminal law must nevertheless conduct research and preparation in the particular case in which he has been appointed. The problem that Chief Judge Bazelon found to be "exceedingly difficult" was whether the out-of-court time devoted to study and research of elementary matters may be said to be "reasonably expended" within the meaning of the Act.

The briefs filed in this case in connection with the pretrial motions reflect that counsel did expend a great deal of out-of-court time in the preparation of those briefs. In light of the fact this case was not, in our view, an unusual case, and in light of the fact that this case was an open file discovery case, it is now apparent that it is indeed difficult to conclude that this case may properly be certified as a "complex" case within the meaning of the Act. We are further satisfied that many, if not most, cases that are terminated by guilty pleas will be found to be usual rather than complex cases.

Our refusal to certify this case as complex is not intended as any reflection of the services rendered by Mr. Partee. We simply find and conclude that his motion for certification must be denied for the reasons we have stated above.

**B.**

■ It is appropriate to add that appointed counsel for Patricia K. Jewett did not seek a certification that an amount in excess of $2,000.00 was necessary for fair compensation within the meaning of the Act. We recognize, of course, that Glenn R. Jewett was named in all 17 counts of the indictment as contrasted to the fact that Patricia K. Jewett was named in a substantially smaller number of counts. It cannot, however, be overlooked that all four defendants were named in Count I which alleged a conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 846. It was alleged that the conspiracy existed from September 20, 1984 to December 21, 1984. Each of the substantive counts which followed alleged particular transactions between those two dates, consistent with the pattern usually and routinely followed in the prosecution of drug cases in this judicial district. The government's decision that this case should be an open file discovery case facilitated appointed counsel's investigation in regard to whether the government could prove that defendant Glenn R. Jewett, in fact, made or aided and abetted the making of the various sales of LSD and the various telephone calls concerning LSD on the particular dates alleged in both the conspiracy count and the various substantive counts in the indictment.

Appointed counsel for Glenn R. Jewett and that defendant concluded as a result of the government's open file discovery policy that the government could prove its case beyond reasonable doubt. Glenn R. Jewett accordingly tendered and this Court accepted that defendant's plea of guilty to all counts of the indictment in which he was named. Acceptance of defendants Patricia K. Jewett's and Shelley G. Eck's pleas of guilty to all counts of the indictment in which they were named and the imposition of sentences on all three defendants terminated what we find to be a usual and routine controlled substance case.[8]

**8.** We have considered the government's response to appointed counsel's motion which

stated generally that the Assistant United States Attorney was familiar with the "complexity" of

We have approved the application of counsel appointed to represent Patricia K. Jewett in the requested maximum amount of $2,000.00 plus expenses. We believe it is appropriate that appointed counsel for Glenn R. Jewett be awarded the same maximum $2,000.00 plus expenses in this case.

## IV.

■ A final word should be added. In *United States v. Bailey*, 343 F.Supp. 76 (W.D.Mo.1971), then Chief Judge Becker reduced appointed counsel's claim for compensation under the Criminal Justice Act after examining a letter from counsel explaining the basis for his claimed compensation. Chief Judge Becker concluded that the claim should be substantially reduced for the reason that an allowance of the amount claimed by appointed counsel in that case "would be out of line with allowances in similar cases" in this district. We agree that disparity in the awards of compensation to appointed counsel should be avoided.

Between January 1, 1985 and November 15, 1985, the various district judges in the Western District of Missouri allowed compensation for 65 appointed counsel pursuant to 18 U.S.C. § 3006A. All those awards were made after the 1984 amendment doubling the hourly rates was effective. Of those 65 cases, only eight were certified to the Chief Judge of the Eighth Circuit for amounts in excess of the maximum $2,000.00 district court statutory limit. And in only three of those cases did appointed counsel request certification of an amount in excess of $3,000.00, which is appointed counsel's request in this case.

Two of those three cases involved lengthy trials. The third case, like this case, was terminated by guilty pleas by two defendants on the eve of trial in a broad-scale racketeering case. That case, however, unlike this case, involved various pretrial motions which required several ex-

tensive evidentiary hearings before the court. None of the other eight cases allowing excess compensation were cases in which pleas of guilty were accepted.

Given this background of certifications for allowances made in this judicial district for compensation in excess of the $2,000.00 district court maximum allowable by the Act, it would be inconsistent with those cases should this Court certify and award fees to appointed counsel in this case in excess of the $2,000.00 maximum limit provided in Section 3006A(d)(2).

## V.

Accordingly, it is

ORDERED that appointed counsel Ronald E. Partee's request for certification of an amount in excess of $2,000.00 made in his motion for approval of excess compensation under the Criminal Justice Act should be and is hereby denied. This Court will accordingly amend and approve the application for fees filed by appointed counsel Ronald E. Partee to provide for a total allowed amount of $2,000.00 plus expenses of $148.89.

## APPENDIX A

### MEMORANDUM AND ORDERS DENYING VARIOUS PRETRIAL MOTIONS

This case pends on twelve pretrial motions, ten of which were filed on behalf of defendants Glenn R. Jewett, Patricia K. Jewett, and Shelly G. Eck. A single motion was filed on behalf of Glenn R. Jewett and another motion was filed on behalf of Patricia K. Jewett. All ten of the motions filed on behalf of Shelly G. Eck were mooted by this Court's acceptance of her pleas of guilty on August 15, 1985 to each count of the indictment in which that defendant was named.

---

the case and would not oppose appointed counsel's request for certification. The question of whether a case may be considered "complex" within the meaning of the Act and the applicable guidelines and standards must be determined by this Court on the particular facts of the case and not on the basis of conclusory statements made either by appointed counsel or on the basis of like conclusory statements made by government counsel.

We have considered all of the pending motions, the suggestions in support and the suggestions in opposition. We find and conclude that all twelve motions should be denied. As will be apparent a substantial number of the motions are clearly without merit in light of the fact, as the government stated at the omnibus hearing proceeding conducted on June 20, 1985, that the above case is an open file discovery case.

The last paragraph of Chief Magistrate Hamilton's June 20, 1985 Order entered with respect to the filing of pretrial motions stated the following:

Counsel are reminded that in the order filed November 26, 1968, providing for an omnibus hearing in each criminal action, the Court en banc stated that the purposes of the omnibus hearing procedure are to encourage voluntary disclosure and to eliminate written motion practice except where absolutely necessary. *Prior to filing any discovery motion, counsel should (1) carefully review the omnibus hearing report to ascertain the extent of the discovery ordered during the hearing and (2) take full advantage of the voluntary discovery offered by the Government. It is not necessary for discovery motions to be filed when the Government affords "open file" discovery. United States v. Johnson,* 751 F.2d 291, 295 (8 Cir. Dec. 31, 1984, No. 84–1195). (Emphasis in the order).

In *United States v. Johnson,* 751 F.2d 291, 295 (8th Cir.1984), the Court of Appeals responded to a defendant's charge of ineffective assistance of counsel based on an alleged failure to file discovery motions by stating that "as to discovery motions, it was unnecessary for Johnson's attorney to make any in light of the open file policy of the United States Attorney."

In spite of the fact that this is an open discovery case, many of the pending motions were based on the untenable notion that the government was somehow withholding information and that it has not, in fact, offered to make available to each of the defendants much more information than that which defendants are able to obtain in districts in which the United States Attorney's office refuses to adopt and follow an open file discovery policy in any pending case.

We turn now to each of the pending motions.

## I.

### *Motion for Bill of Particulars*

The pending motion for bill of particulars was filed only on behalf of defendant Glenn R. Jewett. The government's response in opposition to that motion establishes that the government, pursuant to its open file discovery policy, has voluntarily provided all defense counsel with access to its entire investigative report, with copies of all exhibits attached thereto, copies of all electronic tape recordings, copies of the pen register, and search warrant materials. It is also established that the government has consented to the entry of an order providing for the disclosure of all grand jury transcripts before trial.

Under these circumstances, it is obvious that the full discovery afforded obviates the need for any bill of particulars. It is therefore

ORDERED that defendant Glenn R. Jewett's motion for bill of particulars should be and is hereby denied.

## II.

### *Defendant Patricia Jewett's Motion to Sever*

It is clear from the face of the indictment that Patricia Jewett has been joined as a proper defendant in accordance with Rule 8 of the Federal Rules of Criminal Procedure. No appropriate showing has been made for relief under Rule 14 of the Federal Rules of Criminal Procedure. The conclusive and speculative statements of counsel make no such showing and defendant's suggestion that some sort of pretrial hearing should be conducted to permit Patricia Jewett to adduce unidentified evidence

which would somehow justify the entry of an order to sever is unsupported by any legal authority. Should circumstances develop at trial which might require consideration of a Rule 14 motion, such motion may be made and ruled at that time. For that reason the pending motion will be denied without prejudice.

Accordingly, it is

ORDERED that defendant Patricia Jewett's motion to sever should be and the same is hereby denied without prejudice.

### III.

#### Motion to Dismiss Based on Illegal Conduct of Government Agents

This motion and all of the remaining motions were filed on behalf of defendants Glenn R. Jewett, Patricia K. Jewett, and Shelly G. Eck. As above stated, this and all succeeding motions are denied in regard to Glenn R. Jewett and Patricia K. Jewett who have entered and are presently standing on pleas of not guilty.

The pending motion characterizes the government's conduct as illegal and outrageous. Nothing stated in either defendants' motion or their supporting memorandum even attempts to specify any conduct about which defendants complaint. Defendants' suggestion that an evidentiary pretrial hearing should be convened is untenable under the circumstances.

Accordingly, it is

ORDERED that defendants', motion to dismiss based on illegal conduct of government agents should be and the same is hereby denied.

### IV.

#### Motion to Compel Disclosure of Existence and Substance of Promises of Immunity, Leniency or Preferential Treatment

The motion papers reflect that the Chief United States Magistrate has already ordered the disclosure of any and all promises made to any witness at the June 20, 1985 omnibus hearing. *See* Omnibus Hearing Report, p. 11. Defendants have made no showing why the relief granted by Chief Magistrate Hamilton is not sufficient under the circumstances.

Accordingly, it is

ORDERED that defendants' motion to compel disclosure of existence and substance of promises of immunity, leniency or preferential treatment should be and the same is hereby denied.

### V.

#### Motion for Hearing to Determine Appropriate Presentation of Tape Recordings and/or Transcripts

The motion papers establish that the government is familiar with the standards of the Eighth Circuit in regard to the admissibility and use of electronic tapes and transcripts of those tapes. Those papers also establish that defense counsel have been furnished with copies of all tapes and transcripts and have not suggested that any tape is inaudible or that the transcript may be inaccurate.

We will assume that counsel in this case, as counsel in many cases in which tapes and transcripts have been used, will be able to agree upon the manner in which the evidence of the tapes will be submitted to the jury. If counsel are unable to reach agreement, a circumstance which we do not anticipate, defendants or the government should file a timely motion well in advance of trial, for a Rule 17.1 pretrial conference at which the matter will be appropriately considered. Defendants' prayer for an order directing a hearing is unsupported by the citation of any legal authorities and, in any event, is premature.

Accordingly, it is

ORDERED that defendant's motion for hearing to determine appropriate presentation of tape recordings and/or transcripts should be and the same is hereby denied.

### VI.

#### Motion to Produce the Grand Jury Testimony

The motion papers establish that the Assistant United States Attorney assigned

the above case advised counsel for defendant Glenn R. Jewett that the government did not object to the disclosure of the transcript of all grand jury testimony and that he suggested that defense counsel prepare a proposed order for this Court's signature. The government properly objects to any photocopying of the transcripts.

In light of the consent of the government, it is

ORDERED that counsel promptly agree upon the form of a court order authorizing defendants' counsel to inspect the transcripts of all grand jury proceedings conducted in connection with the above case and to present the same for this Court's approval within three (3) days of this order.

## VII.

### *Motion to Identify Informants and Other Discovery*

The motion papers establish that it was agreed at the omnibus hearing that one of the two confidential informants would be disclosed. It is further apparent that a second confidential informant provided information in support of the State of Kansas wiretap. The government objects to the disclosure of the second informant.

The government, however, attached the affidavit filed in support of the State of Kansas wiretap application and further stated that all DEA reports dealing with all disclosed informants have already been produced by the government for inspection by defendants' counsel. That limited disclosure is sufficient under the circumstances.

The Assistant United States Attorney has also stated that he does not know of any wiretapping that may have been conducted without court authorization and that he has contacted the DEA and has confirmed that such agency knows of no wiretapping that has not been revealed. Defendants' lengthy memorandum of law which cited numerous familiar cases does not support a finding that defendants are entitled to any additional relief.

Accordingly, it is

ORDERED that defendants' motion to identify informants and other discovery should be and the same is hereby denied.

## VIII.

### *Motion for Discovery*

Careful study of defendants' memorandum of points and authorities in support of their pending motion does not suggest that defendants have not been furnished a complete record of all affidavits, applications, and orders authorizing all wiretap and other electronic surveillance. The motion papers establish that defendants' counsel have not registered any complaint to the Assistant United States Attorney in regard to the data furnished pursuant to the orders entered in that regard by Chief Magistrate Hamilton. *See* Omnibus Hearing Report, p. 4.

Accordingly, it is

ORDERED that defendants' motion for discovery should be and the same is hereby denied.

## IX.

### *Motion to Compel Government to Provide Defendants with Witness Lists Thirty Days Prior to Trial*

The motion papers establish that the usual order requiring the government to supply its witness list ten days in advance of trial was entered by Chief Magistrate Hamilton at the omnibus hearing. *See* Omnibus Hearing Report, p. 6.

This case is presently set for trial to commence September 16, 1985. In light of the Assistant United States Attorney's explicit statement that he would continue to cooperate with counsel for the defendants on an informal basis in regard to furnishing information concerning the government's witnesses prior to the mandatory ten-day period, and in light of the fact that defendants do not even allege any exceptional circumstances that would warrant the time date requested, it is

ORDERED that defendants' motion to compel the government to provide defendants with witness lists 30 days prior to trial should be and the same is hereby denied.

## X.

*Motion In Limine for Pretrial Order Regarding the Admissibility of Tapes and Federal Rules of Evidence 801(d)(2)(E) Statements*

Defendants contend that a pretrial hearing must be convened pursuant to Rule 104 of the Federal Rules of Evidence to determine the admissibility of any co-conspirator declarations which may be offered in evidence pursuant to Rule 801(d)(2)(E). *United States v. Reda*, 765 F.2d 715 (8th Cir. 1985), is the latest discussion of the questions presented by defendants' motion. *See* particularly Part IV of that opinion, p. 720 to 722, in regard to the standards applicable in this circuit and the procedures available in dealing with the question presented. Further, defendants' request to resolve "foundation problems" is premature in that no such "problems" are identified in either the motion or memorandum filed in support thereof.

This Court is not advised of any reason why procedures routinely agreed upon by counsel in the identification of any foundation problems may not be followed in this case. As above stated, this case is set for trial on September 16, 1985. Counsel are advised that this case, unless otherwise disposed of, will be transferred from this division of the Court to an active judge of this Court for actual trial.

Because different district judges follow different procedures in regard to statements of an alleged co-conspirator, the pending motion will be denied without prejudice so that the same may be ruled by the judge to whom the case is eventually assigned for trial.

Counsel are advised that if they are not able to reach full agreement in regard to procedures to be followed, the questions presented is another question that might be considered at any Rule 17.1 pretrial conference which may be convened either upon motion of a party or by the judge who will try the case. Counsel are admonished to arrange their preparation for trial and any request for a Rule 17.1 pretrial conference in a manner that will present the question well in advance of trial.

Accordingly, it is

ORDERED that defendants' motion in limine for pretrial order regarding the admissibility of tapes and Federal Rules of Evidence 801(d)(2)(E) statements should be and the same is hereby denied without prejudice.

## XI.

*Motion to Dismiss Indictment*

The pending motion moves to dismiss the indictment on the alleged ground that the same is multiplicitous. That motion is without merit.

Accordingly, it is

ORDERED that defendants' motion to dismiss indictment should be and the same is hereby denied.

## XII.

*Defendants' Motion to Suppress All Wire Intercept Conversations and Evidence Unlawfully Derived Therefrom Obtained by the Government in Violation of Title 18, Section 2517(5)*

Defendants' motion generally seeks the suppression of all wiretap conversations obtained by the government in alleged violation of Title 18 U.S.C. § 2517(5) and all evidence derived as a result of an alleged impermissible use of such statements. Specifically, defendants' motion is directed to (1) the proceedings before the Magistrate in obtaining search warrants, (2) the proceedings before the federal grand jury which returned the indictment, and (3) the use of the fruits of the Kansas wiretap at trial.

The portion of the motion directed to the proceedings before a Magistrate to obtain a search warrant is clearly without merit. *See United States v. Vento*, 533 F.2d 838

(3rd Cir.1976), and *United States v. Johnson,* 539 F.2d 181 (D.C.Cir.1976).

A different question, however, is presented in regard to the government's use of the Kansas wiretap before the grand jury and the use of evidence derived from the Kansas wiretap at trial.

There is no apparent dispute about the factual circumstances. The moving papers and the exhibits attached thereto establish that the Kansas wiretap was obtained under the Kansas wiretap statute for the purpose of gathering information concerning the possession of LSD with intent to sell and the sale of LSD and the offense of conspiracy to commit those offenses as defined by Kansas law.

The conversations intercepted pursuant to the Kansas wiretap were presented to Chief Magistrate Hamilton on December 21, 1984 and were later presented to the federal grand jury to obtain the indictment in the present case. The federal indictment alleges violation of federal law prohibiting the possession with intent to sell LSD, the sale of LSD, and a conspiracy to commit those federal offenses. The government concedes that it neither sought nor received any judicial approval under Section 2517(5). The government states that it did not believe that prior approval was necessary.

Defendants rely primarily on *United States v. Brodson,* 528 F.2d 214 (7th Cir. 1975), and the majority opinion in *United States v. Marion,* 535 F.2d 697 (2d Cir. 1976). The government on the other hand, relies on the more recent cases of *United States v. Smith,* 726 F.2d 852 (1st Cir. 1984), and *United States v. Watchmaker,* 761 F.2d 1459 (11th Cir.1985).

While the Eighth Circuit has not passed on the question, we are satisfied that the Eighth Circuit will follow and apply the rationale of the First Circuit in *Smith* and the Eleventh Circuit in *Watchmaker.* Both those circuits determined that a less rigid rule than that applied in *Brodson* and followed in *Marion* should be applied to Section 2517(5). Those circuits concluded that Section 2517(5) must be construed in light of the intent of Congress that a wiretap authorization order to investigate one offense should not be used as a subterfuge to acquire evidence of an entirely different offense.[1]

No question of subterfuge is presented in this case. For it is clear that the Kansas LSD offenses for which the Kansas wiretap was authorized are substantially the same as the federal LSD offenses alleged in the indictment involved in this case. *Cf. United States v. Moore,* 513 F.2d 485 (D.C. 1975) ("similar offense" exception to the District of Columbia analogue to Section 2517(5)). *See also United States v. Campagnuolo,* 556 F.2d 1209 (5th Cir.1977), an earlier Fifth Circuit case relied upon by the Eleventh Circuit in *Watchmaker,* and *United States v. Southard,* 700 F.2d 1 (1st Cir.1983), relied upon by the First Circuit in *Smith.*

We believe, however, that it should be added that it is more than a little difficult for this Court to understand why the federal government did not seek and obtain a Section 2517(5) order from the Kansas State court before making any use of the information obtained pursuant to the Kansas wiretap. Judge Kaufman stated in his majority opinion in *Marion* that "[w]e would hope, therefore, in view of the clear dictates of our ruling in this case, that in the future law enforcement officials will as a matter of prudence seek to secure explicit approval of such incidental interceptions." And the First Circuit stated in *Smith* that "[w]hen a state wiretap yields evidence of federal crimes not specified in the warrant, the best way for the investigating officers to insure that the requirements of § 2715(5) are met is for them to obtain judicial authorization to use that evidence."

---

1. Compare the Eighth Circuit's adoption of a less rigid rule in regard to a district court's power and jurisdiction to authorize the installation of a pen register in *Application of United States for Order, Etc.,* 546 F.2d 243 (8th Cir. 1976), with this Court's view of the same question as stated in *Application of United States,* 407 F.Supp. 398 (W.D.Mo.1976), in which we refused to enter the pen register orders requested by the government.

Until the Supreme Court of the United States definitively decides the question, it would seem to be clear that law enforcement officers should follow the admonitions quoted in the cases just cited.

For the reasons stated, it is

ORDERED that the defendants' motion to suppress all wire intercept conversations and evidence unlawfully derived therefrom obtained by the government in violation of Title 18 Section 2517(5) should be and the same is hereby denied.

John W. Oliver

John W. Oliver

Senior Judge

Kansas City, Missouri

August 21, 1985