**UNITED STATES of America**

v.

**Terrance BAILEY, Appellant.**

**No. 75–1595.**

United States Court of Appeals, District of Columbia Circuit.

July 14, 1978.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

Counsel appointed by the court to represent an indigent on an appeal from a felony conviction [1] seeks compensation exceeding the $1,000 limitation imposed generally by the Criminal Justice Act of 1964.[2] By the terms of the Act, compensation above $1,000 is allowable if the court certifies that it is "necessary to provide fair compensation" for "extended or complex representation" and the chief judge of the circuit approves the payment.[3] In this instance, counsel seeks $1,750, representing 3.25 in-court and 82.42 out-of-court attorney-hours computed at the statutory rates,[4] and the application does not on its face bring the claim clearly within nor leave it manifestly outside the exception for excess compensation.[5] To boot, since the governing criteria are hardly self-explanatory and no refining judicial opinion is in sight,[6] some exploration into their meaning is essential. So, to enable me to determine whether I should certify this application for consideration by the Chief Judge, I must endeavor to ascertain much more definitely the contours of the statutory standard.

I

Under the Act as originally passed, the general limit on compensation for felony appeals was $500, and excess compensation could be awarded only in "extraordinary circumstances" for trials involving "protracted representation."[7] That ceiling remained in vogue for six years, during which it precipitated some reported judicial efforts toward interpretation and application.[8] When, in 1969, Congress took a second look at the matter of compensating court-appointed counsel, it relied heavily on a study by Professor Dallin H. Oaks noting that "[m]ost judges have been quite close-fisted in the administration of [the excess-compensation] provision. . . . " [9] The author of the study was primarily concerned with unfair discrimination between similarly-situated attorneys seeking above-limit compensation;[10] he perceived that the strictness with which the standard was actually being applied varied dramatically

---

1. See *United States v. Stoddard*, 180 U.S.App. D.C. 209, 553 F.2d 1385 (1977), wherein counsel's client was a co-appellant.

2. Pub.L. No. 88–455, 78 Stat. 552, 553 (1964), as amended, 18 U.S.C. § 3006A(d)(2) (1976). The Act in current form will hereinafter be cited as codified.

3. "Payment in excess of any maximum amount provided . . . may be made for extended or complex representation whenever the court in which the representation was rendered . . certifies that the amount of the excess payment is necessary to provide fair compensation and the payment is approved by the chief judge of the circuit." 18 U.S.C. § 3006A(d)(3) (1976).

4. See 18 U.S.C. § 3006A(d)(1) (1976); *United States v. Hunter*, 394 F.Supp. 997, 1001 (D.D.C. 1975) (Bazelon, C. J., D.C.Cir.).

5. See text *infra* at note 42 and following.

6. Diligent research has failed to produce any published opinion fully interpreting these criteria under the current Act.

7. "In extraordinary circumstances, payment in excess of the limits stated . . . may be made if the district court certifies that such payment is necessary to provide fair compensation for protracted representation, and the amount of the excess payment is approved by the chief judge of the circuit. For representation of a defendant in an appellate court, the compensation to be paid to an attorney . . shall in no event exceed $500 in a felony case and $300 in a case involving only misdemeanors." Pub.L. No. 88–455, 78 Stat. 552, 553 (1964), 18 U.S.C. § 3006A(d) (1970).

8. *United States v. Naples*, 266 F.Supp. 608, 609 (D.D.C.1967) (Bazelon, C. J., D.C.Cir.); *United States v. Lowery*, 261 F.Supp. 396, 397 (D.D.C. 1966) (Bazelon, C. J., D.C.Cir.); *United States v. Aadal*, 280 F.Supp. 866, 869 (S.D.N.Y.1967); *United States v. Dodge*, 260 F.Supp. 929 (S.D. N.Y.1966) (Lumbard, C. J., 2d Cir.).

9. Subcommittee on Constitutional Rights of the Senate Comm. on the Judiciary, The Criminal Justice Act in the Federal District Courts 179 (Report to Judicial Conference of the United States by Professor Dallin H. Oaks) (Comm. Print 1969), hereinafter cited as "Oaks Report."

10. *Id.* at 180.

from district to district, and indeed from judge to judge within single districts.[11] Notwithstanding the context in which Professor Oaks' observation on "closefisted[ness]" was made, the committees of both Houses interpreted it as a finding that "the original language [of the excess-compensation exception] has been given too restricted an interpretation." [12]  In 1970, then, Congress raised the general limit to $1,000, included appeals within the category of representation that could warrant excess compensation and rephrased the exception in an effort to ease the eligibility requirements.[13]

Professor Oaks also believed that an increase of the general limit to $1,000 would minimize the rephrasing problem by eliminating the need for all but a few excess-compensation applications.[14]  That prediction has not withstood the test of time, and judges are increasingly called upon to determine whether the "extended or complex representation" criterion has been met.[15] Professor Oaks had little hope that the new language would succeed in ending the problem of discrimination,[16] and it can fairly be said that the amended Act leaves the prerequisites for excess compensation as "essentially standardless" as its predecessor did.[17]  Adding further to the dilemma, the legislative history [18] does not eliminate the ambiguities to which excess-compensation claimants have thus fallen heir.

## II

Reverting to the statutory language, two preconditions to excess compensation emerge.  First, the claim must be for "representation" either "extended or complex" in character.[19]  "[R]epresentation" obviously means the time and energy expended by counsel in the client's behalf, the totality of which is a potential factor. Common sense confines its value, however, to reasonably competent and productive effort, and excludes bumbling and wasteful activity from the count.  "[E]xtended" representation is of a piece with "protracted" representation under the old standard,[20] each connoting a temporal element—a substantial investment of time.  "[C]omplex" representation refers to the intricacies of the case and their corresponding call on counsel's intellectual resources.  An appeal presenting thorny issues summoning a high degree of expertise may justify excess compensation though a more pedestrian case demanding the same number of attorney-hours might not.

Very importantly, insofar as the first requirement is concerned, the representation may be either "extended or complex"; it need not be both.  The statutory language thus accommodates legal service of long duration in the simpler case as well as shorter-term service in complicated litigation.  It should be noted, however, that—especially in appellate work—the drain on counsel's time may and normally will bear a direct relationship to the perplexities of the case, and that resultantly complexity may become the more urgent and useful inquiry.

The second prerequisite to an award of excess compensation is that it be "necessary to provide fair compensation." [21]  That condition has been in the Act from its very

11.  *Id.*

12.  S.Rep. No. 790, 91st Cong., 2d Sess. 7 (1970) and H.R.Rep. No. 1546, 91st Cong., 2d Sess. 11 (1970), reprinted in [1970] U.S.Code Cong. & Admin.News pp. 3982, 3990.

13.  Pub.L. No. 91–447, 84 Stat. 916, 917 (1970), 18 U.S.C. § 3006A(d)(3) (1976); see *United States v. Thompson,* 361 F.Supp. 879, 883 (D.D.C.1973) (Bazelon, C. J., D.C.Cir.).

14.  Oaks Report, *supra* note 9, at 180–181.

15.  See Report of the Criminal Justice Act Division, Administrative Office of the United States Courts 3–5 (1978), hereinafter cited as "Administrative Office Report."

16.  Oaks Report, *supra* note 9, at 181.

17.  See *id.* at 182.

18.  No other relevant legislative history has been found.

19.  See note 3 *supra.*

20.  See note 7 *supra.*

21.  See note 3 *supra.*

beginning,[22] but the 1970 revision gave it quite a different cast. In original form the Act confined excess compensation to cases involving "extraordinary circumstances," [23] an element no longer essential. And while in such circumstances "protracted representation" was compensable, representation that was "complex" but not "extended" did not qualify—another consideration Congress changed.[24] As has been stated, moreover, the overall congressional endeavor was to liberalize compensation awards and thereby "to alleviate the burden of representing indigents accused of crime." [25] The Act in its current version thus sets a lower threshold for excess-compensation eligibility than its forerunner indulged.[26] But the standard was eased, not abolished, and lest the general $1,000 ceiling be completely obliterated judges may not always approve full compensation for all service, however reasonably it may have been rendered.[27] It must be remembered, too, that the fairness of the amount allowed is to be measured in terms of the time-rates set by the Act, and not by those that counsel might ordinarily charge.[28]

There is still another factor, and one indeed weighty. The purpose of the Act, as stated in its preamble, is "[t]o promote the cause of criminal justice by providing for the representation of defendants who are financially unable to obtain an adequate defense in criminal cases in the courts of the United States." [29] And the legislative history demonstrates both a congressional intent to implement the mandate of the Sixth Amendment for effective assistance of counsel in criminal proceedings and the congressional dedication to this fundamental goal. Members of the House [30] pointed to the Sixth Amendment,[31] to judicial pronouncements on the right to counsel,[32] and to that right's elemental relationship to justice.[33] Many emphasized the shortcomings of the existing system under which counsel were assigned on an uncompensated, nonreimbursable basis; some expressed concern for the stability of convictions if that system were to continue.[34] There was general agreement that the time had come to concretize the constitutional pledge of an ade-

22. See note 7 *supra.*

23. See note 7 *supra.*

24. Compare note 7 *supra* with note 3 *supra.*

25. See *United States v. Perry,* 153 U.S.App. D.C. 101, 103, 471 F.2d 1069, 1071 (1972).

26. Compare *United States v. Hunter, supra* note 4, 394 F.Supp. at 1000.

27. *Id.* at 1001 n. 10. In fiscal year 1977 excess compensation was granted in only 31 of 2,270 appeals involving appointed attorneys. Compare Administrative Office Report, *supra* note 15, at 2 with *id.,* Exhibit D at 1.

28. Oaks Report, *supra* note 9, at 170; *United States v. Harper,* 311 F.Supp. 1072, 1074 (D.D. C.1970) (Bazelon, C. J., D.C.Cir.).

29. 78 Stat. 552 (1964).

30. The Act reached final form in conference. See H.R.Rep. No. 1709, 88th Cong., 2d Sess. (1964); 110 Cong.Rec. 18521–18522, 18556–18558 (1964). Although it was a mixture of portions of both the Senate and House bills, the final legislation was predominantly the House version. See H.R.Rep. No. 1709, *supra,* at 5. This fact gives special significance to the debate on the House bill as an expression of the

purpose the new statute was intended to serve. See *Steiner v. Mitchell,* 350 U.S. 247, 254, 76 S.Ct. 330, 334–335, 100 L.Ed. 267, 273 (1956).

31. 110 Cong.Rec. 446 (1964) (remarks of Representative Moore); *id.* at 448 (remarks of Representative Celler); *id.* at 450 (remarks of Representative Carey); *id.* at 452 (remarks of Representative Halpern); *id.* at 454 (remarks of Representative Fraser).

32. *Id.* at 445 (remarks of Representative Rogers); *id.* at 446 (remarks of Representative Moore); *id.* at 447 (remarks of Representative Willis); *id.* at 448 (remarks of Representative Celler); *id.* at 452 (remarks of Representative Halpern); *id.* at 453 (remarks of Representative Poff); *id.* at 455 (remarks of Representative McCulloch); accord, S.Rep. No. 346, 88th Cong., 1st Sess. 4, 9 (1963).

33. 110 Cong.Reg. 444 (remarks of Representative Rogers); *id.* at 446 (remarks of Representative Moore); *id.* at 447 (remarks of Representative Willis); *id.* at 449 (remarks of Representative Lindsay); *id.* at 453 (remarks of Representatives Mathias and Poff).

34. See *id.* at 444 (remarks of Representative Rogers); *id.* at 451 (remarks of Representative Cahill).

quate defense irrespective of economic status.

■ The Sixth Amendment, of course, guarantees to indigents accused in a federal criminal prosecution not just the "mere formal appointment"[35] of someone who happens to be a lawyer but more critically legal assistance that is reasonably diligent, conscientious and competent.[36] Clearly, then, courts are to interpret the Act "to assure competent representation of indigent defendants,"[37] and that objective is disserved by a narrow and miserly construction of the excess-compensation provision. Only if the practicing bar is encouraged to participate broadly and enthusiastically in the defense of indigent criminal defendants can the promise of the Act ever become reality.[38]

### III

■ Reverting to the statutory language, viewed carefully in the light of these relevant considerations, I come to what I believe to be the definitive test. It is, as has earlier been suggested in this circuit, that excess compensation is to be allowed if, but only if, the legal or factual problems in the case, or the quantity or nature of the service demanded, are "significantly" greater than average.[39] The point of reference is the case commonly encountered, and the comparison must reveal enough margin of difference to justify a confident conclusion that excess compensation is essential to fairness. To be sure, in terms of precision and ease of application, these criteria leave something to be desired. But undeviating advertence to the considerations underlying the power to award excess compensation will do much to assure the validity of its operation, and the achievement of the ends that the Act was intended to promote.

The unfortunate vagueness in the excess-compensation standard is mitigated in considerable degree by everyday judicial experience. Appellate judges are well acquainted with the demands made by criminal appeals in general, and thus know about where in the spectrum the average is to be struck. In this circuit, the judge passing on the compensation claim will also be familiar with the appeal for which compensation is sought,[40] and thus will be in excellent position to compare the two. But not even the judge's expertise will uncover complex or time-consuming issues that do not find their way into either counsel's briefs or judicial deliberations on the merits of the case. Nor will it necessarily enable the judge to understand why a seemingly simple case

---

**35.** *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377, 379 (1940).

**36.** *United States v. DeCoster,* 159 U.S.App.D.C. 326, 331, 487 F.2d 1197, 1202 (1973); see *Holloway v. Arkansas,* 435 U.S. 475, ——, 98 S.Ct. 1173, 1182, 55 L.Ed.2d 426, 438 (1978).

**37.** *United States v. Tutino,* 419 F.Supp. 246, 248 (S.D.N.Y.1976); accord, *United States v. Hunter, supra* note 4, 394 F.Supp. at 999 ("the overriding legislative goal [was to provide] competent legal services").

**38.** *United States v. Hunter, supra* note 4, 394 F.Supp. at 999–1000; see S.Rep. No. 346, *supra* note 32, at 2, 5; Ervin, *Uncompensated Counsel: They do Not Meet the Constitutional Mandate,* 49 A.B.A.J. 435, 438 (1963). A study of the experience under the Act in the Superior Court of the District of Columbia tellingly describes the danger that must be avoided:

> Existing procedures for reviewing and approving claims for excess compensation are heavily weighted against counsel. They discourage attorneys from applying because of strong pressure from the courts to keep compensation within maximum limits and the lengthy delays involved in getting payment. As a consequence, counsel may be discouraged from doing all that a complicated case calls for, or, if he or she is conscientious, counsel may do the work necessary, but at an hourly rate substantially below the statutory maximum. The potential chilling effect is manifest.

Joint Committee of the Judicial Conference of the D.C. Circuit and the D.C. Bar (Unified), Report on Criminal Defense Services in the District of Columbia 88 (1975). See also *Camensich v. United States,* 180 U.S.App.D.C. 95, 553 F.2d 1271 (1976) (statement of Bazelon, C. J.).

**39.** *United States v. Thompson, supra* note 13, 361 F.Supp. at 884.

**40.** It is the practice of this court to assign the initial decision on Criminal Justice Act vouchers to the judge who wrote the majority opinion, if any, for the court, otherwise to the presiding member of the panel.

required as much effort as may be reported by counsel.

■ For these reasons, it has been strongly indicated that counsel seeking excess compensation should provide sufficient details to support the premises that the representation was indeed extended or complex and that the excess is essential to fairness of the remuneration.[41] In the instant matter, I was not given assistance of that kind, and consequently have reached a determination on excess-compensation from first-hand knowledge of the issues involved in the appeal and my perception of counsel's handling of them, all in comparison with what criminal appeals normally involve.

Although this is a somewhat close case, I am of the view that certification of excess compensation is warranted. The appeal raised questions sufficiently troubling to call for careful articulation of the court's decision and views in a written opinion. The brief prepared for the appellant contributed greatly to our consideration of the issues, and the number of hours for which compensation is sought readily indicates that counsel was called upon to contribute significantly greater efforts to this case than would have been required in the average criminal appeal.[42] Moreover, the time counsel spent, when compared with the quality of his written and oral arguments, does not seem disproportionate to the product of his labors. Denying full compensation in these circumstances would be to ignore not only the letter but also the salutary spirit of the Criminal Justice Act. I therefore approve compensation in the amount of $1,750, plus counsel's itemized expenses.

41. *United States v. Thompson, supra* note 13, 361 F.Supp. at 884; *United States v. Naples, supra* note 8, 266 F.Supp. at 608–609. See also *United States v. Parker,* 298 F.Supp. 482 (D.D. C.1969) (Bazelon, C. J., D.C.Cir.). Counsel did not make any attempt, in the application or otherwise, to point up any above-average difficulties faced or services rendered. This failure necessitated a strenuous and time-consuming effort to resolve the problems posed by counsel's application.

42. Counsel has requested $1,750, all of which appears justified by the nature of the representation demanded and performed. The average payment in Criminal Justice Act cases in fiscal year 1977 was $740, Administrative Office Report, *supra* note 15, at 3, thus confirming that the situation before me is well above the crowd.