**UNITED STATES of America, Plaintiff,**

v.

**Alfonso Ramon DIAZ, et al., Defendants.**

**No. CR 91–863–(B)ER.**

United States District Court,
C.D. California.

Sept. 14, 1992.

Hector Perez, Los Angeles, Cal., for defendant Mario Alberto Rios.

Patrick Smith, Deputy Federal Public Defender, Los Angeles, Cal., for defendant Victoria Concepcion Garcia.

## MEMORANDUM DECISION AND ORDER RE: CRIMINAL JUSTICE ACT PETITION

RAFEEDIE, District Judge.

A Criminal Justice Act ["CJA"] petition and supplemental petition have been presented to this Court seeking attorneys' fees in excess of $10,000. Counsel for defendant Alfonso Ramon Diaz [hereinafter "petitioner"] asks the Court to certify that this case was an "extended or complex" case warranting departure from the statutory maximum of $3,500.00. After considering the petitions and petitioner's response to the Court's Order requesting further explanation of the vague entries contained in the petition, the Court concludes that this case was neither an extended or complex case. Accordingly, the sum of $3,500.00 previously issued is ordered as full payment for all services rendered by petitioner.

### I.

### INTRODUCTION

In order to grant petitioner's request for fees in excess of the maximum allowed by 18 U.S.C. Section 3006A, the Court must certify that a waiver of the statutory maximum is justified. 18 U.S.C. Section 3006A(d)(3). It has been the Court's experience that requests in excess of the maxima established by the Criminal Justice Act have become the rule rather than the exception. Therefore, a detailed discussion of when the granting of such waivers is appropriate would, in the Court's view, prove useful to both the bench and bar.

U.S. Atty., Asst. U.S. Atty. Richard G. Rathmann, Los Angeles, Cal., for U.S.

Karen Woods, Los Angeles, Cal., for defendant Apolinario Paniagua Garcia.

Robert Ramsey, Los Angeles, Cal., for defendant Alfonso Ramon Diaz.

Phillip A. Trevino, Los Angeles, Cal., for defendant Efrain Hernandez Gutierrez.

### II.

### FACTS

Petitioner was appointed to defend Alfonso Ramon Diaz, a defendant in this Court who was determined to be "financially unable to obtain adequate representa-

tion." 18 U.S.C. Section 3006A(a). Mr. Diaz was charged along with four other defendants with violations of 18 U.S.C. Section 371, 18 U.S.C. Section 1951 and 18 U.S.C. Section 659.[1] The charges resulted from the arrest of Diaz and his co-defendants for stealing a semi-trailer from interstate shipment. The trailer contained a shipment of toy guns valued at $28,000.00. All defendants except Diaz pled guilty. Diaz' trial lasted 2½ days, excluding jury selection. No evidence or witnesses were presented by the defense, and after approximately five minutes of deliberation, Diaz was convicted by a jury on two counts: conspiracy to affect goods in interstate shipment by robbery (18 U.S.C. Section 371); and robbery of goods from interstate shipment (18 U.S.C. Section 1951).

Petitioner first petitioned the Court for compensation in the amount of $9,772.50, almost triple the $3,500 maximum for felony representation provided for in the Criminal Justice Act. 18 U.S.C. Section 3006A(d)(2).[2] He then requested an additional $741.11 for representation during the sentencing process, bringing the total amount of fees requested to $10,513.61.[3]

Because petitioner's original petition was wrought with general entries such as "trial preparation," and "legal research," and because the amount far exceeded the maximum fees allowed by statute, the Court ordered petitioner to file a supplemental detailed explanation regarding the services for which compensation was being sought. An interim payment of $3,500.00 was authorized on July 2, 1992.

It is of significance to the Court that one of the other panel attorney's requested fees totalling $3,307.50. Admittedly, the attorney had represented a client who pled guilty rather than proceeding to trial, but given the nominal difficulties and minimal time associated with the actual trial and the fact that the decision to plead was made at the beginning of jury selection, the fee requests should be roughly comparable. This great disparity between the two requests compels the Court to carefully scrutinize the request before it.

### III.

**A. Background of the Criminal Justice Act.**

Attorneys appointed pursuant to the Criminal Justice Act, and courts administering the Act, have an obligation to apply the statute as intended by Congress. Funds allocated for administration of the Act were depleted in June of this year, requiring the suspension of payments until the following fiscal year.[4] This occurred despite accurate predictions regarding the total number of CJA representations.[5] In part, it is the increasing requests to exceed the statutory maxima, as well as the apparent willingness of some judges to do so, that has contributed to this fiscal shortfall.

The importance of providing adequate representation to defendants who could not otherwise afford it should not be trivialized in a system of criminal justice. The Criminal Justice Act of 1964 was primarily prompted by the shortcomings of a system which did not compensate appointed attor-

---

**1.** Two defendants were represented by attorneys from the Public Defender's Office. Three defendants were represented by panel attorneys appointed pursuant to the Criminal Justice Act (CJA). At this point in time, the court has received two CJA petitions for compensation, including the one currently before the court.

**2.** This decision only relates to the attorney's request for representation fees. Any reasonably incurred expenses will be reimbursed under a separate order pursuant to 18 U.S.C. Section 3006A(d)(1) ("... Attorneys shall be reimbursed for expenses reasonably incurred, including the costs of transcripts authorized by the United States magistrate or the court.")

**3.** The Criminal Justice Act does not make any distinctions regarding the various stages of litigation, but simply provides for a $3,500 maximum fee for representation of a felony. 18 U.S.C. Section 3006A(d)(2). Therefore, both petitions are included in this Order.

**4.** Memorandum from the Committee on Defender Services of the Judicial Conference, May 22, 1992. Payments suspended between June 30, 1992 and October 1, 1992.

**5.** *Id.*

neys.[6] Providing for compensation of such counsel was considered necessary to prevent · the "mere formal appointment" of counsel and to ensure reasonably diligent, conscientious and competent representation. *United States v. Bailey*, 581 F.2d 984, 988 (D.C.Cir.1978).[7]

Still, compensation was intended. to prevent economic hardship and ease the financial burden of counsel in these cases, not to eliminate that burden entirely. House Report, 1986 U.S.Code Cong. & Ad.News at 6165–6166; *see also Bailey*, 581 F.2d at 989. CJA compensation has never been intended to mirror private sector rates or to result in an annuity for the bar. *United States v. Carnevale*, 624 F.Supp. 381, 383 (D.R.I.1985). It was intended to partially alleviate the financial burden associated with provision of these services which had been traditionally provided pro bono. *Id.* The spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature.

Revisions of the Act since 1964 illustrate Congress' recognition that adequate compensation must be provided to attorneys appointed to represent criminal defendants, but that there are fiscal limitations associated with providing these services.[8] In fact, the 1970 revision of the Criminal Justice Act relaxed the threshold for finding that a case warrants compensation over the maximum by changing the wording from "extraordinary circumstances" in a trial involving "protracted representation" to the current wording.[9]

The impetus behind these revisions, however, does not negate the fact that Congress has balanced the competing interests and has passed a statute reflecting that balance. Within the statute, Congress gave courts the means to override its determination of fair compensation on a case by case basis by allowing for waiver of the maxima if representation is "extended or complex." Still, courts must recognize that the maxima are intended as the rule, and waiver of these maxima as the exception. This principle should be applied with the understanding that if a case is truly more extended or complex than average, waivers should not be granted in a narrow or miserly fashion, lest provision of these services becomes inadequate. *Bailey*, 581 F.2d at 989.

When presented with a CJA petition for fees in excess of the statutory maximum, the court must engage in a two part analysis.[10] The threshold question is whether the attorney's representation was "extended or complex" justifying waiver of the maximum. 18 U.S.C. Section 3006A(d)(3). The second prong of the analysis is a determination of what amount of fees is "fair compensation." The relevant provision of the statute reads in its entirety:

(3) **Waiving maximum amounts.**—Payments in excess of any maximum amount provided in paragraph (2) of this subsection may be made for *extended or complex representation* whenever the court in which the representation was rendered, or the United States magistrate if the representation was furnished exclusively before him, certifies that the

---

**6.** 110 Cong.Rec. 444 (1964) (remarks of Representative Rogers); *id.* at 451 (remarks of Representative Cahill).

**7.** It seems unnecessary to provide a more detailed description of the legislative history of the Criminal Justice Act up to the 1970 revision because this has been done at length in *United States v. Bailey*, 581 F.2d 984, 986–989 (D.C.Cir. 1978). Subsequent revisions have adjusted rates and ceilings upward to offset increases in legal costs, but have not made substantive changes regarding waiver of the statutory maximums.

**8.** In 1970 and in 1986, the maximum amounts and hourly rates were increased. In addition, the Judicial Conference was given the authority

to raise the hourly rates to a maximum of $75.00 per hour in specific circuits or districts when appropriate.

**9.** House Report, 1986 U.S.Code Cong. & Ad. News at 6165, 6169.

**10.** The court's analysis of what constitutes "fair compensation" should be done even if the amount requested does not exceed the statutory maximum. Because this case involves a request for an amount far in excess of the maximum, this decision focuses on the two-part analysis required. However, petitions are often filed requesting fees for less than the maximum, yet still in excess of the fees that should be granted.

amount of the excess payment is necessary to provide *fair compensation* and the payment is approved by the chief judge of the circuit. The chief judge of the circuit may delegate such approval authority to an active circuit judge.

18 U.S.C. Section 3006A(d)(3) (emphasis added).

### B. *Extended or Complex Representation*

■ According to the *Guidelines for the Administration of the Criminal Justice Act,* a case is "extended" if "more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings.[11] A case is "complex" if the "legal and factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case."[12] To qualify for a waiver of the maximum amounts, representation may be either extended or complex; it need not be both. *Bailey,* 581 F.2d at 984.

Extended representation connotes a temporal element—a substantial investment of time. *Id.* Complex representation "refers to the intricacies of the case and their corresponding call on counsel's intellectual resources." *Id.* The *Bailey* court established the following test for determining whether a waiver should be granted: excess compensation is to be allowed "if, but only if, the legal or factual problems in the case, or the quantity or nature of the service demanded, are significantly greater than average." *Bailey,* 581 F.2d at 989.

In applying this test, "the point of reference is the case commonly encountered, and the comparison must reveal enough margin of difference to justify a confident conclusion that excess compensation is essential to fairness." *Id.* The certifying judge should rely on everyday judicial experience to mitigate the vagueness of this standard. *Id.*

■ In sum, before granting any amount of fees in excess of the statutory maxima

pursuant to the Criminal Justice Act, the court must determine that representation was either extended or complex. This determination should be made by evaluating that particular case as it compares to the average case before the court with regard to investment of time or complexity of issues. Ultimately, everyday judicial experience must guide the court's determination.

### C. *Fair Compensation*

Once representation is certified as "extended or complex," the court's inquiry does not end. In fact, regardless of the amount of fees requested, the court must determine what fee constitutes "fair compensation."

According to the *Guidelines for the Administration of the Criminal Justice Act,* the court must determine a fair and reasonable fee using the following criteria: responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

It is essential for attorneys to be aware of their responsibility with regard to CJA petitions submitted to the court. Attorneys seeking compensation have the burden of providing sufficient details to support the contention that a case is more complex or time-consuming than the average case. *Carnevale,* 624 F.Supp. at 386. This burden also exists with regard to the reasonableness of hours provided.

Broad categories such as "legal research" or "interviews" or "other services" cannot be found to have been reasonably expended unless counsel's supporting memorandum furnishes sufficiently detailed descriptions of services to warrant that find-

---

**11.** *Guide to Judiciary Policies and Procedures, Guidelines for the Administration of the Criminal Justice Act,* Volume VII, Section A, Chapter II, 19–20 (March 1, 1991).

**12.** *Id.*

ing. *United States v. Thompson,* 361 F.Supp. 879 (D.C.Dist.Col.1973). Counsel is entitled to be paid only for hours that are necessary for reasonably diligent, conscientious, and competent representation. *United States v. Kilroy,* 563 F.Supp. 304, 306 (E.D.Wis.1983).

The *Guidelines for the Administration of the Criminal Justice Act* include the following sections:

*Claim for Less than the Case Compensation Maximum.* In any case in which the total compensation claimed is less than the statutory case compensation maximum, counsel *may* be required to submit a memorandum supporting and justifying the compensation claimed, whenever called for by local rule, standing order, or by the presiding judicial officer.

*Claim for More than the Case Compensation Maximum.* In any case in which the total compensation claimed is in excess of the statutory case compensation maximum, counsel *shall* submit with the voucher, a detailed memorandum supporting and justifying counsel's claim that the representation given was in an extended or complex case, and that the excess payment is necessary to provide fair compensation ...

*Guide to Judiciary Policies and Procedures, Guidelines for the Administration of the Criminal Justice Act,* Volume VII, Section A, Chapter II, 19–20 (March 1, 1991) (emphasis added).

■ A petition for fees presented to the court pursuant to the Criminal Justice Act is tantamount to billing a well informed client. The detail provided must be sufficient to allow exercise of informed judicial discretion. *United States v. Tutino,* 419 F.Supp. 246 (D.C.N.Y.1976). Courts must hold attorneys to this responsibility by requiring supplemental memoranda if the original petition is too vague.[13] Any vagueness in the nature of the representation must be resolved against counsel who has the burden of showing the justification for waiver of the maximum amount and reasonableness of hours. *Id.* at 389.

Compensation should be made only for "reasonably productive time." *United States v. Carnevale,* 624 F.Supp. 381 (D.R.I.1985). Examples of unreasonable hours include, when counsel in a multi-defendant case has primarily ridden the coattails of other defendant's counsel; when time has been spent by a new attorney obtaining general competence; and when there is any overlap of requested hours which must be weeded out. *Id.* at 388–389. Moreover, courts should not compensate attorneys for hours spent "handholding" the defendant or defendant's family as these hours lend themselves particularly well to "fee churning." [14]

### DISCUSSION

■ The Court does not consider the representation provided by Mr. Diaz' attorney to be extended or complex, therefore a waiver of the statutory maximum is not warranted and the interim payment of $3,500 will constitute the attorney's total compensation for representation.[15]

---

**13.** A comparison between the two CJA petitions submitted to the court for co-defendants in the same case illustrates this point. Mr. Diaz' attorney listed the date, the hours provided and for the most part provided a cursory explanation such as "conference with client," "reviewed discovery," "trial preparation," or "legal research." The other CJA petition indicated the type of service, such as "telephone call with AUSA" or "meeting with client" and then went on to indicate the purpose of those calls or meetings, e.g., "meeting with client to discuss guilty plea, advise of rights and confer," or "I had to read/interpret PSI to [client], as well as discuss it with him." Similarly, the more detailed CJA petition did not simply state "reviewed documents," but indicated which documents, i.e., "review government's plea offer."

**14.** There is an additional problem associated with excessive client meetings or any other services unnecessarily provided in that these hours generate further expenses related to travel, parking, etc., resulting in an even greater drain on CJA resources.

**15.** As indicated previously, reasonable expenses will be reimbursed by separate Order.

The time reasonably required to process this case was not greater than the time required to process the average case. Petitioner claims payment for the following services and hours: [16]

| Interviews and Conferences | 41.1 Hours |
|---|---|
| "Conference with AUSA" | 4.6 Hours |
| "Conference with client" | 29.9 Hours [17] |
| Review of Records | 31.7 Hours |
| "Reviewed Discovery" | 4.5 Hours |
| "Reviewed Evidence" | 1.0 Hours |
| "Trial Preparation" | 26.2 Hours |
| Legal Research | 11.0 Hours |
| "Legal Research" | 4.0 Hours |
| "Drafted Response to gov't. Motion" | 7.0 Hours |
| Travel Time | 23.0 Hours |
| "Travel to/from court" | 10.0 Hours |
| "Travel to/from MDC" | 13.0 Hours |

The time required for representation in this case cannot be considered greater than average.[18] The trial itself lasted just 2½ short days, excluding jury empanelment. Petitioner claims only 13.8 hours of trial time. No evidence or witnesses were presented by the defense. In the Court's view, the case can best be characterized as a "slow plea" of guilty.

The Court requested a fuller explanation of the entries "trial preparation" and "legal research," and requested an explanation as to why so many client conferences were needed. The supplemental explanations submitted in response to the Court's order were wholly insufficient to justify waiver of the maximum amount or to justify the reasonableness of many of the hours provided.

In explaining the hours submitted for "trial preparation," petitioner indicated that many hours were spent preparing evidence and witnesses for a possible alibi defense. Each date was then broken down and details such as "reviewed witnesses' statements," "prepared trial notebook," "conference with private investigator," "reviewed government evidence," and "reviewed jury instructions" were provided.

With regard to "legal research," on one date the research "related to the charges of the indictment and proposed jury instructions." The other three dates all "related to research of issues raised in the government's motion to introduce 404(b) evidence, and the response prepared and filed in opposition to the government Motion in Limine."

Finally, the numerous client conferences were supposedly necessary "for effective representation." Petitioner pointed out that the defendant did not speak English, therefore face to face meetings with an interpreter were always required. In addition, the defendant was detained at the Metropolitan Detention Center which resulted in substantial travel and waiting time for each visit.

The Court does not view any of these justifications as sufficient to warrant a

16. Various entries submitted with the original CJA petition to describe the representation in this case illustrate the paucity of detail provided to the Court.

17. The few remaining hours listed more than one person, e.g., "Conference with client's wife; Conference with DFPD; Conference with AUSA."

18. Although Mr. Diaz was the only defendant to proceed to trial, the entire disposition of one of his co-defendant's case took approximately eight months from arraignment to sentencing. That defendant's attorney has only requested $3,307.50.

finding that representation in this case was more time consuming or complex than the average felony case. As a preliminary matter, the contention that an inordinate amount of time billed for client conferences was spent in travel and the administrative process surrounding each visit indicates to the Court that fewer, more productive meetings should have been held. In addition, it appears that much of the client conference time was spent "handholding" the defendant. The court does not view 29.9 hours of client meetings to be reasonable for providing adequate representation in this case.[19]

Moreover, the mere fact that a defense attorney has spent time preparing a defense does not by itself render the time required or the demand on counsel's intellectual resources to be greater than average. The attorney's supplemental information describing his trial preparation provided no basis for a finding that this was an extended case. Time was spent reviewing witnesses' statements, reviewing government evidence, preparing a trial notebook, and reviewing various records related to the possible alibi defense. There were no extraordinary factual or legal issues involved in the standard responses to the two government motions, nor did the defense attorney file any motions of his own. Finally, there were no numerous or complex defenses which might have justified the need for a greater than average amount of time or skill in preparing the defense.

The defendant was charged in a three-count indictment which was superseded twice by the government. The superseding indictments, however, did not significantly alter the charges against the defendant. The Second Superseding Indictment substituted a charge of Theft of Goods from Interstate Shipment for Robbery Affecting Goods in Interstate Shipment. The Conspiracy charge was also amended to add allegations of additional overt acts on the part of the defendants. The Third Superseding Indictment made only minor changes relating to the overt acts of the

defendants. The evidence presented against defendant Diaz at trial was overwhelming, no defense was presented, and the jury deliberated for five minutes before returning a verdict.

The Court is hard pressed to imagine a more average case with regard to both time and skills necessary to provide adequate representation. Examples of cases where an excess over the maximum has been granted help to illustrate the average nature of the present case. *U.S. ex rel. Kubat v. Thieret*, 690 F.Supp. 725 (N.D.Ill. 1988) (waiver of the maximum warranted in a habeas case where the complex and unique legal issues lead to nine separate constitutional challenges in over 230 pages of written argument); *United States v. Carnevale*, 624 F.Supp. 381 (D.R.I.1985) (representation both extended and complex where trial lasted twelve days, exclusive of jury empanelment, there were several pretrial motions, the case involved a fifty-seven count indictment, and the government presented approximately sixty-six witnesses); *United States v. Farley*, 565 F.Supp. 71 (E.D.Wis.1983) (representation was complex where defendant was indicted in seven separate counts for violations of a statute not yet definitively construed, resulting in an attack on both the statute and the indictment); *United States v. Quintero–Medina*, 489 F.Supp. 82 (N.D.Ill.1980) (representation both extended and complex where trial lasted twenty-one days and more than 1,500 pages of written materials were produced for counsel's examination).

Similarly, cases denying compensation in excess of the maximum support the finding that the case presently before the court was neither extended or complex. *United States v. Jewett*, 625 F.Supp. 498 (W.D.Mo. 1985) (drug prosecution involving four defendants not complex simply because of multiple defendants and none of counsel's ten pretrial motions involved novel or complex issues of fact or law); *United States v. Hildebrandt*, 420 F.Supp. 476 (D.C.N.Y. 1975) (excess compensation denied despite

---

**19.** For purposes of comparison, the CJA petition received by the court from the panel attorney of a co-defendant identified eight client meetings over the period of November 6, 1991 to June 18, 1992, for a total of 9.3 hours.

provision of excellent representation ·because the case involving conspiracy to violate federal narcotics laws and other drug related offenses was relatively simple and much of the hours spent conferring with defendant's wife or U.S. Attorney's office were inessential).

## CONCLUSION

A petition for fees requesting payment over the maximum authorized by the Criminal Justice Act requires a fact-based determination by the Court regarding the length and complexity of the case, as it compares to an average case. Waiver of the statutory maximum should only be granted if the legal or factual problems in the case, or the quantity or nature of the service demanded, are significantly greater than average.

In addition, when a petition for fees is received from a CJA appointed attorney, the court must determine fair compensation based on hours reasonably expended to provide adequate representation. · To enable the court to make this determination, appointed attorneys have a responsibility to provide sufficient detail regarding their hours. Vague descriptions such as "trial preparation" are simply inadequate in this regard. Any embellishment or misrepresentation of hours for the purpose of obtaining what the attorney considers to be fair compensation must not be tolerated by the courts.

It is the Court's observation that there now exists a cadre of attorneys on the CJA panel who depend largely upon representation of indigent defendants for their livelihood. This is an unhealthy situation which greatly increases the potential for "fee churning," as well as other forms of abuse, such as double billing of hours. An effort should be made to broaden the composition of the panel to reduce the number of attorneys whose practice is almost entirely dependent upon CJA representations in order to minimize the potential for such abuse.

The Court is not unmindful of the fact that appointed attorneys provide a crucial service to the criminal justice system. It may be that the maximum fees currently allowed under the Act are insufficient to provide adequate compensation even in the average case. Concerns of this sort, however, must be addressed to Congress for a legislative determination of an appropriate adjustment to the statute. It is the duty of the court to apply legislation as it exists, not as the courts or the bar wish it existed. Fees granted in excess of the statutory maxima absent the finding that representation was extended or complex abdicates this duty, and is an inappropriate means of ameliorating any perceived inadequacy of compensation under the statute.

The representation made by petitioner cannot be considered more extended or complex than the average felony case, therefore, the interim payment in the amount of $3,500 is payment in full.

IT IS SO ORDERED.