SCONE INVESTMENTS, L.P., and
Stanley Cohen, Plaintiffs,

v.

AMERICAN THIRD MARKET CORPO-
RATION, Israel A. Englander, Rose-
house Ltd., Christopher Carajohn, Rich-
ard Prichard–Jones, Tellerstock, Inc.,
Thomas N. Telegades, Investor Rela-
tions, Inc., Peter C. Tosto and Standard
Bank Investment Corporation (Jersey)
Limited, Defendants.

No. 97 Civ. 3802(SAS).

United States District Court,
S.D. New York.

Jan. 26, 1998.

Jerome M. Leitner, New York City, for Plaintiffs.

Allan S. Sexter, New York City, for Defendants American Third Market Corp. and Israel A. Englander.

## OPINION AND ORDER

SCHEINDLIN, District Judge.

Plaintiffs bring this action against all defendants alleging (1) violations of § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission, (2) common law fraud, and (3) bad faith and negligence. Plaintiffs also assert a claim against defendants Israel A. Englander ("Englander"), Christopher Carajohn ("Carajohn"), Richard Prichard–Jones ("Prichard–Jones"), Thomas N. Telegades ("Telegades") and Peter C. Tosto ("Tosto") alleging that, as "control persons," they violated §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b–5 promulgated thereunder by the Securities and Exchange Commission. Defendants American Third Market Corp. ("ATM") and Englander (collectively "movants") move to dismiss the Complaint as against them pursuant to Fed.R.Civ.P. 9(a), 9(b) and 12(b)(6). They also move in the alternative to compel arbitration of the claims against them and stay the action until the arbitration is completed pursuant to the Federal Arbitration Act. 9 U.S.C. §§ 3 and 4. For the reasons set forth below, the motion to compel arbitration is granted. Therefore, the parties are directed to arbitration, and I will not address the motion to dismiss.

## I. Background

Plaintiffs claim that in 1995 defendants Carajohn, Prichard–Jones and Rosehouse Ltd. combined and conspired with defendants Tellerstock, Inc., Investor Relations, Inc., Telegades and Tosto to devise and implement an unlawful scheme to manipulate the market prices of thinly traded "penny stock" securities through brokers such as defendants ATM and its officer, Englander.[1] See Plaintiffs' Memorandum of Law in Opposition to Motion to Dismiss or Stay the Action ("Plaintiffs' Memo") at 1. The alleged scheme involved manipulative trading of these securities, principally among Rosehouse, Ltd., an entity owned by Carajohn and Prichard–Jones, Tellerstock, Inc., owned by Telegades, and Investor Relations, Inc., owned by Tosto, in order to manufacture market activity and manipulate the price for the pecuniary benefit of the defendants and to the detriment of other investors. See Complaint at ¶¶ 5–11, 18, 21–25.

In February 1996, plaintiff Stanley Cohen ("Cohen") authorized Carajohn to execute securities transactions for his account, as well as the account of plaintiff Scone Investments, L.P. ("Scone"), on a non-discretionary approval basis. See Complaint at ¶ 26. Each trade made by Carajohn for plaintiffs' accounts was to be confirmed by Cohen upon transfer into plaintiffs' depository accounts with Spear, Leeds & Kellogg ("Spear Leeds"). Id. Carajohn was not a registered representative in accordance with the federal securities laws and was not authorized or permitted to effectuate securities transactions for third parties. Id. at ¶ 27.

On May 14, 1996, Carajohn opened an account with ATM to buy and sell securities on behalf of plaintiffs. See Complaint at ¶ 31; Memorandum of Law of Defendants in Support of Motion to Dismiss the Complaint or Stay the Action Against Them ("Defendants' Memo") at 3. As part of this process, he executed account documents with ATM, in Cohen's name, which purported to authorize him to trade on Scone's account at ATM. See Complaint at ¶ 31. These documents included a standard customer agreement with a clause providing for arbitration of all disputes. See Affidavit of Israel A. Englander ("Englander Aff.") at Ex. 2. Cohen claims

---

1. The securities involved in this case are (1) the over-the-counter stock of Market Basket Enterprises, Inc. ("MKTB"), (2) the over-the-counter stock of BNN Corp. ("BNN"), and (3) the stock of Music & Entertainment Network Corp. ("MENW").

that he never authorized Carajohn to execute any account documents on plaintiffs' behalf at ATM. *See* Complaint at ¶ 31; Plaintiffs' Memo at 2–3.

Carajohn effectuated securities transactions for plaintiffs' accounts through ATM as broker from May 14 through June 26, 1996. *See* Plaintiffs' Memo at 10; Complaint at ¶¶ 28, 33. Cohen authorized the transfers from ATM into plaintiffs' depository accounts at Spear Leeds. *See* Complaint at ¶ 30 (Cohen approved purchases of MENW shares); Complaint at ¶¶ 33, 37 (Cohen accepted the BNN trades for plaintiffs' accounts); Complaint at ¶ 50 (Cohen authorized transfer from ATM into his depository account at Spear Leeds of 1.5 million MKTB shares). However, Cohen claims that he was fraudulently induced by the defendants to accept the transactions. *See* Complaint at ¶ 59. During July and August, 1996, the market price of these securities declined and plaintiffs were unable to sell their stock for an amount approximating the purchase price. *See* Complaint at ¶¶ 41, 51. Plaintiffs are seeking damages in the amount of $2.5 million to compensate them for their resulting losses. *Id.*

## II. *Discussion*

### A. Arbitration

■ The Federal Arbitration Act provides that agreements to arbitrate "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Therefore, a district court must stay proceedings if it finds a valid arbitration agreement, 9 U.S.C. § 3; and may compel arbitration when a party does not abide by that agreement. 9 U.S.C. § 4. If the "making of the arbitration agreement" is in issue, the court "shall proceed summarily to the trial thereof." *Id.*

■ The Supreme Court has consistently held that the Federal Arbitration Act "establishes a 'federal policy favoring arbitration.'" *Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460

U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)); *see also Southland Corp. v. Keating,* 465 U.S. 1, 10, 104 S.Ct. 852, 79 L.Ed.2d 1 (1984). Accordingly, federal policy requires that federal courts rigorously enforce agreements to arbitrate. *See Shearson/American Express, Inc.,* 482 U.S. at 226 (citing *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985)). Moreover, any doubts regarding the existence of an arbitration clause ought to be resolved in favor of coverage. *See AT & T Technologies, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986).

■ Whether an arbitration agreement exists between the parties is an issue for judicial determination. *See AT & T Technologies Inc.,* 475 U.S. at 649; *Corallo v. Merrick Cent. Carburetor, Inc.,* 733 F.2d 248, 252 (2d Cir.1984). In determining the arbitrability of a particular dispute, a court must decide (1) whether the parties agreed to arbitrate in writing and (2) if so, whether the scope of the agreement encompasses the claims being asserted. *See Progressive Casualty Ins. Co. v. C.A. Reaseguradora Nacional De Venezuela,* 991 F.2d 42, 45 (2d Cir.1993). A federal court may only consider issues relating to the making and performance of the arbitration agreement itself, not general contract claims. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967).

■ The Federal Arbitration Act requires that the arbitration agreement be in writing. 9 U.S.C. § 3. However, a party may be bound by an agreement to arbitrate even absent a signature to that agreement. *See Genesco, Inc. v. T. Kakiuchi & Co., Ltd.,* 815 F.2d 840, 846 (2d Cir.1987); *McAllister Bros., Inc. v. A & S Transp. Co.,* 621 F.2d 519, 524 (2d Cir.1980). In the absence of a signed agreement, a court must apply ordinary contract principles to determine whether the party can be bound by the contract. *See id.*

For instance, courts have enforced unexecuted agreements to arbitrate, where traditional indicia, such as conduct in the course

of their transactions, demonstrate the existence of a brokerage contract and the parties' assent to such a contract. *See Gvozdenovic v. United Air Lines, Inc.,* 933 F.2d 1100, 1105 (2d Cir.1991) (citing *Kamakazi Music Corp. v. Robbins Music Corp.,* 684 F.2d 228, 231 (2d Cir.1982) and *Teamsters Local Union No. 764 v. J.H. Merritt and Co.,* 770 F.2d 40, 42 (3rd Cir.1985)); *A/S Custodia v. Lessin Int'l, Inc.,* 503 F.2d 318, 320 (2d Cir.1974); *Fisser v. Int'l Bank,* 282 F.2d 231, 235 (2d Cir.1960).

#### B. The Customer Agreement

■ To determine the arbitrability of this dispute, the first question to be addressed is whether the parties had a written agreement to arbitrate. *See Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 626, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Movants have satisfied their initial burden of "demonstrating a written agreement obligating both plaintiffs to arbitrate" by producing a copy of the customer agreement which includes an arbitration clause and which was purportedly signed by Carajohn on behalf of Cohen to open an account with ATM. *Blatt v. Shearson Lehman/American Express Inc.,* No. 84 Civ. 7715–CSH, 1985 WL 2029, at *2 (S.D.N.Y.1985) (defendants established prima facie case by producing signed contract containing an arbitration clause). *See also* Englander Affidavit at Ex. 2.

■ The burden then shifts to plaintiffs to "demonstrat[e] a 'substantial issue' on the existence vel non of an agreement to arbitrate." *Blatt,* 1985 WL 2029 at *2 (citing *Almacenes Fernandez, S.A. v. Golodetz,* 148 F.2d 625, 628 (2d Cir.1945)). In order to establish a substantial issue of fact, plaintiffs must unequivocally deny that they entered into an agreement to arbitrate with movants and should offer at least some evidence to substantiate their factual allegations. *See Doctor's Associates, Inc. v. Jabush,* 89 F.3d 109, 114 (2d Cir.1996). Plaintiffs have met the first part of this burden: They deny that they entered into this customer agreement or any other written agreement containing an arbitration provision. As to the second part, they claim that Carajohn signed the customer agreement on behalf of plaintiffs without

their knowledge or authority. *See* Complaint at ¶¶ 29–31.

This is not sufficient to raise a "substantial issue" of fact as to the existence of a binding agreement to arbitrate. The plaintiffs concede that Cohen authorized Carajohn to execute at least some of the transactions at issue, *see* Complaint at ¶¶ 29–30. It is also undisputed that the customer agreement executed by Carajohn contains an arbitration clause. *See* Plaintiff's Memo at 2 (citing Englander Aff. at Ex. 2). Moreover, as an attorney and the general partner of Scone Investments, L.P., Cohen is clearly a sophisticated investor. *See* Affidavit of Stanley Cohen at ¶ 1. Taken together, these facts demonstrate that an agreement to arbitrate can be implied from the parties' conduct.

As a sophisticated investor, Cohen can be assumed to be familiar with the securities industry practice of requiring arbitration clauses. *See Ilan v. Shearson/American Express, Inc.,* 632 F.Supp. 886, 890 (S.D.N.Y. 1985) ("[T]he vast majority of brokerage firms require an investor to sign a contract with an arbitration clause in order to open an account."). When he approved the Carajohn-brokered transactions, he therefore had at least constructive knowledge of the ATM customer agreement arbitration clause. His consent to the transactions, in these circumstances, amounts to implied consent to submit to arbitration. *See Blashka v. Greenway Capital Corp.,* No. 94 Civ. 5633, 1995 WL 608284, at *6 (agreement to arbitrate found, despite defendant's inability to produce written contract, where plaintiff was a sophisticated investor and had consented to transactions executed by defendant on his behalf).

#### III. *Conclusion*

Because the parties agreed to arbitrate, the only remaining issue is whether the scope of the customer agreement encompasses the asserted claims. *See Progressive Casualty Ins. Co.,* 991 F.2d at 45. The ATM customer agreement provides that all controversies arising between plaintiffs and movants "concerning any transaction or the construction, performance or breach of this or any other agreement between us pertaining to securities and other property . . . shall be deter-

mined by arbitration." *See* Englander Affidavit at Ex. 2. As such, plaintiffs' complaints against movants are covered by the arbitration clause of the ATM customer agreement. Accordingly, plaintiffs and movants are directed to arbitration.

SO ORDERED: