UNITED STATES of America,
Plaintiff,

v.

Jarrod HOLTZ, Defendant.

No. 03–30057.

United States District Court,
C.D. Illinois,
Springfield Division.

Aug. 3, 2005.

Esteban F. Sanchez, Assistant U.S. Attorney, Springfield, IL, for Plaintiff.

Frederick J. Schlosser, Gates, Wise & Schlosser, P.C., Springfield, IL, for Defendant.

## *OPINION*

RICHARD MILLS, District Judge.

A question of fees for appointed defense counsel.

## FACTS

The Government filed a criminal complaint against Defendant Jarrod Holtz on June 19, 2003. The Government subsequently indicted Holtz on three counts involving drug and firearms offenses. Holtz was indigent; therefore, the Court appointed defense counsel to represent him. *See* 18 U.S.C. § 3006(a) (hereinafter the "Criminal Justice Act" or "CJA"). On October 29, 2003, the Court continued the final pretrial conference and trial on codefendant Justin Reardon's motion. Reardon, who was represented by the Federal Public Defender's Office, struck a plea agreement with the Government on February 19, 2004, and the case proceeded against Holtz.

Holtz filed four unsuccessful substantive motions (a motion to sever trial; a motion for a bill of particulars; a motion to dismiss indictment; and a motion to strike surplusage) and three successful motions to continue before reaching a plea agreement on May 11, 2004. In accordance with the plea agreement, Holtz pled guilty to unlawfully possessing a firearm and the Court sentenced him to eighty-six months in prison, three years supervised release, and ordered him to pay a $100.00 special assessment.

Following the sentencing hearing, Holtz's attorney submitted a fee petition seeking $18,000.60 for his work on the case. Counsel's request exceeded the $5,200.00 maximum fee allowed under the CJA. *See id.* at § 3006A(d)(2)[1]. Thus, counsel included a billing record to justify his petition. According to counsel's record, he spent 57 hours in interviews and conferences, 51.1 hours obtaining and reviewing records, 55.3 hours engaged in legal research and writing, 12.5 hours for case-related travel, and 16.1 hours performing investigative and other work[2]. Counsel also spent 2.2 hours in court via the sentencing hearing, etc. Multiplying the aggregate number of hours counsel worked on the case (194.2) by the authorized rate of pay ($90.00 per hour) and adding $522.60 for expenses, counsel tallied $18,000.60 in attorney's fees and costs.

When the Court authorized fees only up to the CJA's maximum, counsel wrote a letter to the Court and asked that his name be removed from the Court's list of attorneys who are willing to serve as CJA counsel. Counsel was frustrated by the Court's decision to disallow fees in excess of the CJA maximum. He candidly explained that he represented CJA clients at a greatly reduced rate and that it was not feasible to continue handling CJA cases given the expense of maintaining his office and the responsibilities he owed his family. The Court, of course, acceded to counsel's wishes and duly removed his name from the CJA list.

We take this opportunity to address the expectation that all CJA fee petitions and vouchers will be allowed even when they exceed statutory maximums—a view perhaps somewhat generally shared among the defense bar.

## ANALYSIS

■ The Criminal Justice Act, 18 U.S.C. § 3006, *et seq.*, establishes a maximum amount of compensation a court may award appointed counsel in an ordinary case. *See* § 3006A(d)(2). A court may enlarge the maximum fee only when a case is "extended or complex." *See* § 3006A(d)(3). Whether a case is "extend-

---

[1]. Congress has since amended the maximum fee allowable under the CJA, raising it from $5,200.00 to $7,000.00. *See id.*

[2]. Counsel's investigative work was done in addition to the $1,750.00 of work done by an investigator who was earlier appointed and paid from CJA funds.

ed or complex" is a matter of interpretation, but precedents exist[3].

In *United States v. Diaz,* 802 F.Supp. 304 (C.D.Cal.1992), defendant and his co-defendants stole a semi-trailer from interstate shipment and were charged with violating 18 U.S.C. § 371, 18 U.S.C. § 1951, and 18 U.S.C. § 659. While the co-defendants pled guilty, defendant proceeded to trial. Excluding jury selection, the trial lasted two and a half days. The defense presented no evidence or witnesses and the jury deliberated approximately five minutes before finding defendant guilty of conspiring to affect goods in interstate shipment by robbery (18 U.S.C. § 371) and robbery of goods from interstate shipment (18 U.S.C. § 1951). *Id.* at 306.

Defense counsel sought $10,513.61 in attorney's fees under the CJA, a sum that far exceeded the statute's $3,500.00 then-maximum fee. Observing that the CJA's maximum fee can only be exceeded when counsel's representation was "extended or complex," the court determined what constituted "fair compensation." *Id.* The district court refused to depart from the maximum fee because the case was not "extended or complex." Quoting the "Guidelines for the Administration of the Criminal Justice Act," the court explained that a case is "extended" if "more time is reasonably required for total processing than the average case, including pre-trial and post-trial hearings.["] "A case is 'complex' if the legal and factual issues in a case are unusual, thus requiring the expenditure of more time, skill and effort by the lawyer than would normally be required in an average case." *Id.* Extended representation involves "a substantial investment of time." Complex representa-

tion "refers to the intricacies of the case and their corresponding call on counsel's intellectual resources." *Id.* at 308.

The *Diaz* opinion noted that the "Guidelines for the Administration of the Criminal Justice Act" provide that the court must determine a fair and reasonable fee by employing the following criteria:

> responsibilities involved measured by the magnitude and importance of the case; manner in which duties were performed; knowledge, skill, efficiency, professionalism, and judgment required of and used by counsel; nature of counsel's practice and injury thereto; any extraordinary pressure of time or other factors under which services were rendered; and any other circumstances relevant and material to a determination of a fair and reasonable fee.

*Diaz,* 802 F.Supp. at 308.

The *Diaz* court found that counsel's representation was no more extended or complex than the average felony case. The court also noted that compensation under the CJA was not intended to entirely eliminate the financial burden of counsel; rather, Congress intended for the statute to partially ease the financial burden in the provision of services which have traditionally been provided on a pro bono basis. In the court's view, "[t]he spirit of the statute is lost once the CJA representation of indigent defendants loses its essentially pro bono nature." *Id.* at 307. Adequate compensation must be provided to appointed attorneys, but fiscal limitations cannot be ignored. "[C]ourts must recognize that the maxima are intended as a rule, and waiver of these maxima as the exception."

---

**3.** Whether a case is "extended or complex" for purposes of compensation in excess of the Criminal Justice Act's statutory maximum is non-appealable. *See United States v. Smith,* 633 F.2d 739, 741–42 (7th Cir.1980) (analyz-

ing 18 U.S.C. § 3006A(d)(3)); *United States v. Stone,* 53 F.3d 141, 143 (6th Cir.1995) (holding same after collecting cases from the Federal, Seventh, Ninth, Tenth, and Eleventh Circuits).

*Id.* Thus, *Diaz* approved only the statutory maximum fee amount. *Id.* at 308.

Similarly, the district court in *United States v. Jewett,* 625 F.Supp. 498, 499 (W.D.Mo.1985), refused to award attorney's fees in excess of the CJA's maximum. Because the defendant pled guilty, the court determined that the case was not "extended" and that excess compensation could only be awarded if the case was "complex." *Id.* at 501. While the defendant had been charged in each count of a seventeen-count indictment, and counsel filed approximately eleven pretrial motions on the defendant's behalf, the court was not persuaded that the case was complex. The seventeen counts all involved pedestrian drug offenses and the total number of defendants (four) did not make the case exceedingly difficult. *Id.* at 503–04. Thus, the court determined there were no factors which would support certification above the CJA's statutory maximum. *Id.* at 504.

■ In the instant case, counsel tendered a fee petition of $18,000.60—a figure consisting of $522.60 in costs and $17,478.00 in fees (192.4 hours[4] at $90.00 an hour). The Court does not doubt counsel's figure. He has a well-earned reputation for detail and preparation. Likewise, when counsel asserted in his letter that the $90.00 per hour CJA rate is a substantial reduction from his ordinary rate, the Court accepted counsel's word without question.

■ Still, the number of hours that counsel legitimately spent on a case or his usual hourly rate is not the point of reference for assessing a CJA fee petition. "The point of reference is the case commonly encountered, and the comparison must reveal enough margin of difference to justify a confident conclusion that excess compensation is essential to fairness." *United States v. Bailey,* 581 F.2d 984, 989 (D.C.Cir.1978). This was the reason the Court, in originally denying counsel's fee petition, juxtaposed Holtz's case with *United States v. Holzer,* 02–30003. In *Holzer,* a recent criminal matter where an attorney submitted two enlarged fee petitions, the case took over three years to complete and it involved DNA evidence, forensic evidence, a rule to show cause hearing, multiple competency hearings, jury selection, jury trial, and a complicated sentencing hearing[5]. Upon review of *Holzer's* fee petitions, the Court found that the case was sufficiently extended and complex to justify an award of $20,582.25.

As the Court noted in its previous order concerning this case's fee petition, *Holtz* was not nearly as lengthy or difficult as *Holzer.* Although counsel's representation spanned fifteen months in the case sub judice, this was due in part to counsel's three motions to continue and the fact that the United States Probation Office for the Central District of Illinois requires three months to compile presentence investigation reports ("PSRs")[6]. In any case, a case's length is not identical to the extensiveness of counsel's representation. While *United States v. Carnevale,* 624

---

**4.** This total consists of 57 hours interviewing and meeting with parties, 51.1 hours obtaining and reviewing records, 55.3 hours of legal research and writing, 12.5 hours for case-related travel, and 16.1 hours performing investigative and other work.

**5.** Defendant Holzer was resentenced by the Court on July 5, 2005. His attorney has not yet submitted a fee petition for this additional proceeding.

**6.** As defense lawyers know, presentence investigation reports are highly specific, time consuming compilations of a defendant's life and crimes. The U.S. Probation Office generates presentence investigation reports as quickly it can, but it reasonably takes three months to construct, review, and circulate these items.

F.Supp. 381, 386 (D.R.I.1985), has opined that representation is per se "extended" if a case lasts five or more months, *Jewett* appears to suggest that representation can only be deemed "extended" if the case involves three or more days of trial. 625 F.Supp. at 501, n. 5.

This Court disagrees with the *Carnevale* and *Jewett* benchmarks. Representation is "extended" if it involves more time than what is required in the usual case. *See Bailey*, 581 F.2d at 989. Such an assessment must be made with an eye to a court's own docket and exclusions must be made for continuances, preparation of PSRs, etc. Measuring *Holtz* in this fashion, the Court concludes that the case did not involve extended representation. The case's duration was not typical.

Moreover, *Holtz* was not complex. It involved two defendants and a four-count drug and firearm indictment. Counsel filed four routine pre-trial motions and then negotiated a guilty plea for his client. In these respects, *Holtz* is very much on par with *Jewett*. There, as here, the case presented no complexities and was resolved via a plea agreement. Even if the case had gone to trial, it would have been an average felony trial, much like *Diaz*.

None of this is meant to disparage counsel in the slightest degree. He most ably represented Holtz throughout the proceedings and obtained a fine result via his client's eighty-six month sentence. Nevertheless, counsel and many members of the bar wrongly expect the Court to approve their fee petitions regardless of the CJA maximum. *See Diaz*, 802 F.Supp. at 305 (requests in excess of the maximum amount established by the CJA have become the rule rather than the exception). The CJA has a maximum fee and courts and counsel alike are bound by it. Attorneys who accept CJA appointments must recognize this limit.

While CJA appointments are not entirely pro bono, there is a strong pro bono element in these cases. *See United States v. Smith*, 76 F.Supp.2d 767, 769 (S.D.Tex.1999) ("appointed defense attorneys have [an] ... obligation ... to fulfill their time-honored commitment, as officers of the court, to provide a minimal amount of pro bono services to indigent clients."). The hourly rate attorneys receive under the statute assuages any financial loss attendant in CJA cases; CJA fees are not intended to match the fees that might be garnered from privately retained clients. *See United States v. Farley*, 565 F.Supp. 71, 72 (D.C.Wis.1983) ("The [CJA] was not meant to provide counsel with the compensation he ordinarily would receive if privately retained; the maximum hourly rates fixed by the statute demonstrate that fact. Instead, a duty to serve the community was expected to provide a substantial impetus to appointments of counsel."). It is to counsel's credit that he and others like him have accepted CJA cases, working at a reduced rate and providing an outstanding public service. Although the Court understands counsel's disappointment in having his fee petition reduced, the Court is obliged to apply the CJA's statutory maximum for what it is.

*Ergo*, the Court reiterates that it authorizes the statutory maximum of $5,200.00 be paid to defense counsel for his fee in this case.

IT IS SO ORDERED.